MID-AMERICA REGIONAL BARGAINING ASSOCIATION, Plaintiff-Appellant, *v.* MODERN BUILDERS INDUSTRIAL CONCRETE COMPANY, Defendant-Appellee.

First District (4th Division) No. 80-2835

Opinion filed October 15, 1981.

Allan E. Lapidus, Charles E. Murphy, and Joan P. Simmons, all of Fedder, Price, Kaufman & Kammholz, of Chicago, for appellant.

Thomas, Wallace, Feehan and Baron, Ltd., of Joliet (Robert W. Thomas and George J. Vosicky, of counsel), for appellee.

Mr. PRESIDING JUSTICE ROMITI delivered the opinion of the court:

The plaintiff, having obtained a favorable arbitration award, appeals from the refusal of the trial court to confirm the award. The sole issue in this case is whether the defendant can raise the issue of whether there was an agreement to arbitrate seven months after it had notice of the award. In light of the clear language of the statute to the contrary (Ill. Rev. Stat. 1979, ch. 10, par. 112), we hold that it cannot. Accordingly, we reverse the decision of the trial court, enter judgment in favor of plaintiff and confirm the arbitrator's award.

The Mid-America Regional Bargaining Association (MARBA) is an Illinois not-for-profit corporation formed in 1971 which represents various contractor associations whose members perform construction work throughout the greater Chicago area. Defendant, Modern Builders Industrial Concrete Company (Modern Builders), is an Illinois corporation that performs general contracting work. For many years it had been a member of a Contractors' Association of Will and Grundy Counties (the Association). By this membership the Association or its designee was designated as defendant's representative for collective bargaining. In 1971, the members of the Association voted to become a member of MARBA. The Association adopted an amendment to its bylaws which formally made MARBA the sole and exclusive bargaining agent for all its members. Thereafter, defendant signed an agreement indicating it had read and understood the bylaws of MARBA and it would abide by those bylaws. MARBA's bylaws provided, *inter alia*, that if a union took strike action against any member or members of MARBA, each member would, upon MARBA's request, lock out its employees. These bylaws further provided that each member agreed that in case of a breach thereof liquidated damages would be $100 per day per employee employed in violation of this provision, to be distributed to the members of MARBA. Any disputes arising under this provision were to be submitted to and decided by an impartial arbitrator selected by MARBA's board of directors from the names of arbitrators submitted by the American Arbitration Association. Proceedings were to be instituted by written

notice from MARBA to the offending contractor not less than 10 days before the date of the arbitration hearing; and the arbitration could proceed to a hearing and decision despite the failure or refusal of the offending contractor to participate. The arbitrator was given the authority to determine whether the offender had violated any of the provisions, and if so to compute, in accordance with the formula set forth in the bylaws, the amount of liquidated damages payable to MARBA and "to render a decision and award in favor of MARBA in the amount of such damages, together with such other award as the arbitrator shall consider appropriate."

On July 2, 1979, selected members of the Association were struck and picketed by the carpenter's union. In response, MARBA called a lockout to begin on July 6, 1979. Modern Builders violated this directive until July 17, 1979.

On July 9, 1979, MARBA sent Modern Builders a letter informing it that the Association had filed a complaint against it because of its failure to honor the lockout and that MARBA was proceeding to arbitration to collect the liquidated damages provided for in the bylaws. On the same day, Modern Builders sent a letter of resignation to the Association. On July 11, 1979, MARBA informed Modern Builders that the arbitration hearing would be held on July 23, 1979. In response to this notice, Modern Builders on July 17, 1979, informed MARBA that "not being a member of either the Association or of MARBA, Modern Builders does not feel obligated to attend the so-called arbitration hearing." Inconsistent with its claim that it was no longer a member Modern Builders on July 16, 1979, renewed its request to the Association for an exemption for one of its job sites from the lockout, and on July 17, it began to honor lockout directives. On July 19, 1979, the Association informed Modern Builders that its attempted resignation was ineffective. Despite this notification Modern Builders failed to attend the hearing and, being absent, did not there assert that there was no binding agreement to arbitrate.[1] It also did not file an action to stay the proceeding.

The arbitrator, after the hearing, issued his award on July 25, 1979. He determined that Modern Builders was a paidup member of the Association; that the Association had designated MARBA to act as its bargaining agent; that MARBA was authorized to order a lockout; that

---

[1] In its answer to the complaint, defendant denied plaintiff's contention that it did not participate in the hearing. If we were to bind the defendant to this judicial admission it is clear we could not review the question raised by defendant since under section 12(a)(5) of the Uniform Arbitration Act (Ill. Rev. Stat. 1979, ch. 10, par. 112(a)(5)), the issue whether there was an arbitration agreement can only be raised if "the party did not participate in the arbitration hearing without raising the objection." We have elected not to enforce the judicial admission because both parties agree, and indeed assume in their briefs, that defendant did not attend the hearing.

Modern Builders was subject to a fine for failing to honor the lockout; and that it should, within 30 days, pay MARBA damages of $100 per carpenter who worked from July 6 through July 16, 1979. Modern Builders was sent notice of the award on July 26, 1979. When Modern Builders did not pay the award, MARBA commenced this action to confirm the award on November 21, 1979. On February 26, 1980, Modern Builders filed its answer, asserting as a defense that no contract requiring arbitration had ever existed between defendant and plaintiff. The trial court refused to confirm the award and granted defendant's motion for summary judgment.

Modern Builders contends on appeal that it was not a party to the arbitration agreement and therefore not bound by it. We find we have no power to consider the question because it was not timely raised.

■■ It is true, as defendant contends, that under the Uniform Arbitration Act (Ill. Rev. Stat. 1979, ch. 10, par. 101 *et seq.*), before there can be arbitration there must be a valid arbitration agreement and that persons not parties to an arbitration agreement cannot be compelled to participate in arbitration. (*Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 242 N.E.2d 149; *Property Management, Ltd. v. Howasa, Inc.* (1973), 14 Ill. App. 3d 536, 302 N.E.2d 754.) If there is no agreement, the court may stay a threatened arbitration proceeding (Ill. Rev. Stat. 1979, ch. 10, par. 102(b)), or may vacate the arbitration award. (Ill. Rev. Stat. 1979, ch. 10, par. 112(a)(5).) But the absence of an arbitration agreement is a defense only if timely raised. (Ill. Rev. Stat. 1979, ch. 10, par. 112; *Schroud v. Van C. Argiris & Co.* (1979), 78 Ill. App. 3d 1092, 398 N.E.2d 103; *Property Management, Ltd. v. Howasa, Inc.* (1973), 14 Ill. App. 3d 536, 302 N.E.2d 754; *Ramonas v. Kerelis* (1968), 102 Ill. App. 2d 262, 243 N.E.2d 711; *Board of Education v. Education Association* (1979), 286 Md. 358, 408 A.2d 89; *Wacker v. Allstate Insurance Co.* (Minn. 1977), 251 N.W.2d 346.) Section 12(b) of the Uniform Arbitration Act requires that the defense that there was no arbitration agreement must be raised in court within ninety days after delivery of a copy of the award to the applicant; here it was not raised until seven months had passed. As this court stated in *Schroud*, 78 Ill. App. 3d 1092, 1096, 398 N.E.2d 103, 106, where the identical issue was raised: "[W]here the party has failed to file a timely motion to vacate, the award must be confirmed and the party bound thereby even though the matter should not have gone to arbitration."

Defendant contends, however, that:

1. The issue whether an arbitration agreement existed is a matter which must be and can only be adjudicated prior to arbitration in a proceeding to compel arbitration.

2. Plaintiff's complaint to confirm the award constituted plaintiff's first attempt to obtain a judicial determination as to jurisdiction.

Thus, defendant argues the complaint was in effect a proceeding to compel arbitration and, accordingly, defendant's objection was timely made.

■■ Since the major premise of defendant's syllogism is false, the conclusion does not follow. In Illinois, the question of arbitrability is determined not by the arbitrator but by the court. (*Board of Trustees v. Cook County College Teachers* (1980), 87 Ill. App. 3d 246, 408 N.E.2d 1026, *appeal denied* (1980), 81 Ill. 2d 600.) But while the question can be determined before the arbitration hearing in an action brought to compel arbitration (Ill. Rev. Stat. 1979, ch. 10, par. 102(a)), or to stay arbitration (Ill. Rev. Stat. 1979, ch. 10, par. 102(b)), it need not be. Section 12(a)(5) of the Uniform Arbitration Act (Ill. Rev. Stat. 1979, ch. 10, par. 112(a)(5)), provides that: "Upon application of a party, the court shall vacate an award where: (5) There was no arbitration agreement and the issue was not adversely determined in proceedings under Section 22 [Ill. Rev. Stat. 1979, ch. 10, par. 102] and the party did not participate in the arbitration hearing without raising the objection." It is clear from this provision that the question of arbitrability may be raised after the award is issued, if, as here, it was not raised before the hearing. This court is bound by the statute and cannot disregard it, which we would have to do in order to accept defendant's argument that plaintiff's complaint was in effect a proceeding to compel arbitration.

■■ Finally, defendant contends that the bylaws required the arbitrator to determine the total monetary damages and that since he did not, there was no final award and defendant's objection as to lack of jurisdiction is timely. First, we are not convinced that the bylaws did require the award, under all circumstances, to state the total monetary damages. The bylaws gave the arbitrator the authority to "render a decision and award in favor of MARBA in the amount of such damages, together with such other award as the arbitrator shall consider appropriate." They do not state that the award must always state the total amount of damages rather than simply require payment of $100 per day per employee as was done here. An award is valid even though it does not award a specific sum and the actual amount of damages remains to be computed. *Maine Central R.R. Co. v. Bangor & Aroostook R.R. Co.* (Me. 1978), 395 A.2d 1107, 1121, where the court ordered an award confirmed which timely stated the party was "responsible [for the damaged BAR cars] as per Rule 95, Section B.1.a. (6) in the Field Manual."

■■ But even if the bylaws did require the arbitrator to total the award and he exceeded his powers in issuing an award which did not, this would

go to the propriety of the award and not to its existence. Under the statute, for an award to exist it need only be signed and in writing. (Ill. Rev. Stat. 1979, ch. 10, par. 108.) As was held in *Bangor* an award is final and capable of confirmation even though damages are still to be computed where, as here, the computation of damages is merely a ministerial act to be carried out according to a formula set forth in the bylaws. If the arbitrator exceeded his powers by issuing an award without making the computation himself, then that was a defense to be raised in a timely motion to vacate. (Ill. Rev. Stat. 1979, ch. 10, par. 112(a)(3).) Furthermore, defendant could within twenty days after delivery of the award have applied to the arbitrator to correct the award (Ill. Rev. Stat. 1979, ch. 10, par. 109), or if it were determined that the defect related only to form and not to the merits, defendant could, within ninety days after delivery of the award, have applied to the court for modification or correction of the award. (Ill. Rev. Stat. 1979, ch. 10, par. 113(a)(3).) Defendant having failed to exercise any of its remedies in a timely manner has waived the question.

■■ Section 11 of the Uniform Arbitration Act (Ill. Rev. Stat. 1979, ch. 10, par. 111), provides that: "Upon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award." It is clear that under this section the court has no discretion but must confirm the award unless defenses are raised within 90 days from delivery of the award or, if corruption, fraud or other undue means are alleged, within 90 days after such grounds are known or should have been known. Since no defenses were raised within the 90-day period the trial court was required to confirm the award.

For the reasons stated the judgment of the circuit court of Cook County is reversed and the cause is remanded for the entry of an order confirming the award.

Reversed and remanded.

JIGANTI and LINN, JJ., concur.