BEST COIN-OP, INC., Plaintiff-Appellee, *v.* ANTHONY CLEMENTI *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 82—2439

Opinion filed December 27, 1983.

Edward T. Graney and Robert Carrillo, both of Chicago, for appellants.

James B. O'Brien & Associates, Ltd., of Chicago, for appellee.

JUSTICE PERLIN delivered the opinion of the court:

Anthony Clementi and William McCarthy (defendants) appeal from the February 5, 1982, order of the circuit court of Cook County granting to Best Coin-Op, Inc. (Best), judgment on the pleadings in the amount of $3,484.96 in Best's action to confirm an arbitrator's award pursuant to section 11 of the Uniform Arbitration Act (Act). Ill. Rev. Stat. 1979, ch. 10, par. 111.

The dispositive issue on appeal is whether defendants' alleged failure timely to assert any of the statutory grounds for vacatur of the arbitrator's award enumerated in section 12 (Ill. Rev. Stat. 1979, ch. 10, par. 112) of the Act waived their right to challenge that award.

On July 1, 1977, Best entered into a lease agreement with Frank Stape Builders, developer and original owner of a six-unit apartment building at 8647 Forster (Forster property) in Chicago. Under the lease which was to run from June 1, 1977, to June 30, 1984, Best was to equip and maintain a laundry room in the building, and lessor was to receive "25% of all gross revenue" resulting from the use of the laundry equipment by the building's tenants. The lease, a copy of which is present in the record, contains the following paragraphs pertinent to the instant case:

"13. In the event of any dispute or controversy arising out of the operation or alleged breach of this Lease Agreement such dispute or controversy shall be submitted to and be governed by the rules of the American Arbitration Association, and the decision rendered thereunder, whether legal or equitable in nature, shall be final and binding upon the parties. No litigation shall be instituted between the parties hereto except to enforce the award or order of the arbitrators.

\* \* \*

15. This Lease Agreement shall be binding upon and shall inure to the benefit of the Lessor and the Lessee and their respective successors and assigns, *including any future owners, beneficiaries or lessees of the Building, it being the intention of the parties that the interest granted to Lessee herein shall run with the land and Building.*" (Emphasis added.)

The Forester property was sold by Frank Stape Builders to James Weitzema, and in August 1979 Weitzema sold to defendants his beneficial interest in the property.

Defendant Clementi in his testimony acknowledged he was aware of the machines in the building prior to the consummation of defendants' purchase of the building on August 9, 1979. Defendants contend that Weitzema initially "represented \*\*\* that there was no lease between him and [Best] and that the machines would be removed if the defendants so desired." Defendants later learned of Best's claim that its lease remained effective. On March 30, 1980, without resolving the lease dispute, Clementi disconnected the machines and notified Best to remove them. Best accordingly removed its equipment and on July 16, 1980, instituted action against defendants[1] seeking damages for an alleged breach of the lease. On April 1, 1981, defendants moved to dismiss the action on the ground that the lease contained an arbitration clause. Defendants' motion was granted and Best was directed by the trial court to pursue arbitration "if he so desire[d]."[2]

Best accordingly instituted arbitration proceedings, an arbitrator was designated, and on June 26, 1981, an arbitration hearing was held. At the outset of the arbitration proceedings, defendants' counsel challenged the validity of the lease between Best and Frank Stape

---

[1]Although Clementi and McCarthy were two of four beneficiaries of the land trust, they were the only named defendants in the breach of lease action in the circuit court, in the arbitration proceedings and in the petition to confirm arbitration award.

[2]The April 1, 1981, order contains the following: "IT IS ORDERED that the above complaint is dismissed. Plaintiff is directed pursuant to the lease to the American Arbitration Association if he so desires."

Builders; the effect, if any, such lease had on defendants; and whether the lease violated the statute of frauds. Counsel for Best argued that under paragraph 15 of the lease, subsequent purchasers of the property are bound by the lease. Upon completion of testimony, the arbitrator found that a valid and enforceable lease existed between Best and the "ownership of the property located at 8647 Forster in Chicago," and that Clementi "knowingly disconnected the machines that were in the property." These oral findings were incorporated into the written findings issued by the arbitrator and received by the parties on July 10, 1981. Additional findings by the arbitrator which are pertinent to this case included the following:

"FINDINGS OF FACT

1. That the Respondent, ANTHONY CLEMENTI, objected in the Circuit Court of Cook County to a law suit and requested that this mater be settled through arbitration as provided in Exhibit #1, the laundry lease agreement.

2. That ANTHONY CLEMENTI is one of the beneficial owners and authorized agent for the other beneficial owners of the land trust that holds title to the premises which is the subject matter of this case.

3. That at the time ANTHONY CLEMENTI purchased the premises he received the following:

(a) Affidavit of Title showing no laundry lease.

(b) A title guaranty policy subject to the claims of all parties in possession.

(c) An assignment of the beneficial interest in the title holding land trust.

4. That at the time of the aforesaid purchase BEST COIN-OP, INC. was the lessee [and] had machines upon the premises.

5. That ANTHONY CLEMENTI had knowledge of the lease of the machines and in fact desired to terminate the lease and had been advised by the Seller [Weitzema] that the lease had been terminated.

6. That ANTHONY CLEMENTI disconnected the machines and installed his own machines contrary to the terms of the lease.

* * *

9. That the lease set forth in Exhibit #1 was entered into by the owner of the owner of the premises and by the terms of that lease *all successors in interest are construed to be bound by that lease.*" (Emphasis added.)

After making these written findings, the arbitrator awarded

$2,500 to Best and ordered the $300 cost of arbitration to be borne by Clementi.

On August 4, 1981, Best, not having received satisfaction of the arbitrator's award, delivered a "demand letter" to defendants' counsel. On September 15, 1981, Best filed a petition in the circuit court of Cook County to confirm the arbitrator's award. Because defendants failed to respond to the petition, Best moved for default judgment. A hearing on Best's motion was held on November 20, 1981, at which time the trial court granted defendants leave to file within 21 days an answer to Best's petition to confirm the arbitrator's award. Best contends that the trial court directed that defendants' answer was to have been predicated upon an allegation of "corruption, fraud or other undue means" as provided by section 12, paragraph (b) of the Act.[3] (Ill. Rev. Stat. 1979, ch. 10, par. 112(b).) Section 12(b) requires that vacatur of an arbitrator's award must be applied for within 90 days after such award is received *except* where "corruption, fraud or other undue means" are asserted, in which case application for vacatur must be made within 90 days "after such grounds have become known or should have become known."

On December 11, 1981, more than five months after the July 10, 1981, award was delivered to them, defendants filed an "Application to Vacate Arbitration Award." However, defendants' application was not based on "corruption, fraud or other undue means" as directed by the court's November 20, 1981, order. Rather, defendant's application stated only that the award "was entered without a legal basis" and that "the evidence produced by [Best] failed to establish in any way the existence of a lease binding on the defendants." Defendants claimed that their "application" was timely brought within the 21-day period allowed them by the court to respond to Best's petition for confirmation of the award.

On January 25, 1982, Best moved for judgment on the pleadings alleging defendants had failed to comply with the court's order of November 20, 1981, directing that their response be predicated upon "corruption, fraud or other undue means" as required by section 12(b). On February 5, 1982, the trial court entered judgment for Best in the amount of $3,484.96. Defendants appeal from that judgment.

We consider initially defendants' contention that despite the 90-

---

[3] The record contains no report of proceedings or written order to support Best's contention that this restriction was in fact imposed by the court other than the following notation entered on the trial court's docket sheet for 11—20—81: "leave to defendant to file answer under Ch. 10 sec. 112 (5)b. Answer due 21 days;"

day time limit allowed by section 12(b) for applying for vacatur of an arbitration award except where "corruption, fraud or other undue means" are asserted, defendants' application for vacatur was "timely" since it was in fact brought within the 21 days allowed them by the court on November 20, 1981. Best contends on the other hand that because defendants' application for vacatur was not filed within 90 days after defendants received the arbitration award and because that application did not assert "corruption, fraud or other undue means" as required by section 12(b) and directed by the trial court, such application was not timely.

As previously noted, grounds for vacatur of an arbitration award must be asserted in accordance with section 12 of the Act which provides in part as follows:

"Sec. 12. Vacating an award. (a) Upon application of a party, the court shall vacate an award where:

(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of Section 5, as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement and the issue was not adversely determined *** and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by the circuit court is not ground for vacating or refusing to confirm the award.

(b) *An application under this Section shall be made within 90 days after delivery of a copy of the award to the applicant, except that if predicated upon corruption, fraud or other undue means, it shall be made within 90 days after such grounds are known or should have been known.*" (Emphasis added.) Ill. Rev. Stat. 1979, ch. 10, par. 112.

Although the question of whether a valid lease exists between the parties can be raised prior to arbitration, such a determination is not a prerequisite to proceeding with the arbitration. (*Mid-America Regional Bargaining Association v. Modern Builders Industrial Con-*

*crete Co.* (1981), 101 Ill. App. 3d 83, 87, 427 N.E.2d 1011.) Defendants had a right under section 12(a)(5) to challenge the arbitration award on the basis that no binding lease containing an arbitration award agreement existed and to have a court resolve that challenge either: (1) prior to arbitration through proceedings to compel or to stay arbitration (Ill. Rev. Stat. 1979, ch. 10, par. 102); (2) through a timely defense to a petition to confirm the arbitration award (Ill. Rev. Stat. 1979, ch. 10, par. 111); or (3) through a timely application to vacate the arbitrator's award (Ill. Rev. Stat. 1979, ch. 10, par. 112). Had a court determined there was no binding lease between the parties, the court could have stayed arbitration proceedings until the issue was resolved or the court could have vacated the arbitrator's award. (*Mid-America Regional Bargaining Association v. Modern Builders Industrial Concrete Co.* (1981), 101 Ill. App. 3d 83, 86.) Where there is, however, no allegation that the arbitration award was procured by "corruption, fraud or other undue means," the absence of a binding lease must be raised within the 90-day limitation period provided by section 12(b).

It was, in the first instance, defendants' action in moving for dismissal of Best's initial circuit court suit which precluded a judicial determination of the binding effect of the lease in question.

■ Defendants' motion to dismiss the circuit court action, granted on April 1, 1981, did not claim that the lease was invalid or unenforceable but requested dismissal of the action based only upon the lease provision that any dispute arising thereunder was to be submitted to arbitration. The trial court was not requested by defendants to determine the validity of the lease. Defendants are, therefore, now estopped from arguing that the award should be vacated due to lack of such judicial determination *prior* to arbitration.

We note that even though defendants are so estopped, they could have challenged the arbitrator's award *after* receipt of that award by timely asserting grounds for vacatur either in an application to vacate the arbitration award or in response to a petition to confirm such award. Absent an allegation of "corruption, fraud or other undue means," however, vacatur based upon an assertion that no valid lease exists *must* be asserted within 90 days after receipt of the arbitrator's award. Ill. Rev. Stat. 1979, ch. 10, par. 112(b).

■ Defendants here contend, despite this 90-day limitation, that they sought vacatur of this arbitration award within the 21 days allowed them by the trial court to respond to Best's petition to confirm the award. Such action by a trial court cannot, however, extend the 90-day period in which defendants must assert section 12 grounds for

vacatur of an arbitration award. *Schroud v. Van C. Argiris & Co.* (1979), 78 Ill. App. 3d 1092, 1095, 398 N.E.2d 103.

Defendants also assert that the 90-day limitation was preserved for them when, on September 15, 1981, Best filed its application to confirm the July 10, 1981, arbitration award. The filing of such application, however, does not extend the 90-day limitation within which section 12 grounds for vacatur of an arbitration award must be presented. (*Bloom v. Landy* (1979), 72 Ill. App. 3d 383, 394, 389 N.E.2d 1286.) If, within the 90-day period following receipt of the arbitration award, a party fails to assert section 12 grounds for vacatur of an arbitration award, such grounds are barred and a trial court must confirm the award. *Mid-America Regional Bargaining Association v. Modern Builders Industrial Concrete Co.* (1981), 101 Ill. App. 3d 83, 86; *Kress Corp. v. Edward C. Levy Co.* (1981), 102 Ill. App. 3d 264, 267, 430 N.E.2d 593.

Because defendants in the case *sub judice* failed to assert any section 12 grounds for vacatur of the arbitration award within 90 days after receipt of that award or to allege "corruption, fraud or other undue means" as required by section 12(b), they are barred from asserting such grounds.

Defendants contend that a mistake appears on the face of the arbitration award which requires its vacatur. The award is, defendants argue, inconsistent with statements made by the arbitrator at the June 26, 1981, hearing with regard to the original lease document.

A photocopy, rather than the original lease document, was produced by Best at the hearing. Best's counsel indicated that the original was being held by a bank as collateral for a loan made to Best. The arbitrator, relying upon the photocopy, had concluded that the lease was valid and enforceable. The arbitrator, however, advised defendants that he would issue an "arbitrator's subpoena" and they could deliver it to the bank for the purpose of examining the original lease document. The arbitrator stated that if, after defendants delivered the subpoena to the bank, they had some basis to determine that the lease had been terminated or if in fact a lease did not exist, they should inform him of that fact by affidavit and letter. The arbitrator then indicated that should an original lease document not exist "[he] may have to take further testimony." The arbitrator stated: "If in fact there's one [original] at the bank that substantiates [Best's] testimony, that does it. And if that [original] doesn't exist, then we are going to have to find out why that original lease has disappeared."

■ The record does not indicate that defendants delivered an "arbitrator's subpoena" to the bank or that defendants had reason to

believe that the original lease document had terminated or did not exist. Defendants produced no evidence that would lead us to conclude that the award was inconsistent with the arbitrator's statements. Moreover, had defendants discovered such evidence after the award was delivered, they could have made timely application to the arbitrator to clarify the award within 21 days after delivery (Ill. Rev. Stat. 1979, ch. 10, par. 109) or if the alleged "mistake" related only to form and not the merits, defendants could have, within 90 days after delivery of the award, applied to the court for modification or correction of the award. (Ill. Rev. Stat. 1979, ch. 10, par. 113(a)(3).) Defendants, having failed to timely exercise any of the remedies available to them, have waived the question of "mistake." We conclude, therefore, that the trial court in this instance properly confirmed the arbitrator's award.

For the reasons herein stated, the trial court's confirmation of the arbitrator's July 10, 1981, award is affirmed.

Affirmed.

DOWNING, P.J., and HARTMAN, J., concur.