# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Asset Acceptance, LLC v. Tyler*, 2012 IL App (1st) 093559

---

| | |
|---|---|
| Appellate Court Caption | ASSET ACCEPTANCE, LLC, Plaintiff-Appellee, v. TERRENCE TYLER, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-09-3559 |
| Filed | March 2, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where plaintiff purchased defendant's credit card account, sought arbitration regarding the amount due, was awarded the full amount claimed and then sought confirmation of the award, the trial court properly found that defendant forfeited his claim that the arbitration proceedings were a fraud and dismissed his counterclaims on the ground that they were not properly raised in the action to confirm the award, but the trial court erred in confirming the award, since plaintiff did not comply with the requirement of section 13 of the Federal Arbitration Act that plaintiff file with its motion to confirm not only the arbitration award, but also the arbitration agreement. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-M1-140644; the Hon. Leon Wool, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |

| Counsel on Appeal | Theodore A. Woerthwein and John Miller, both of Woerthwein & Miller, of Chicago, for appellant. |
|---|---|
| | Stephen R. Swofford, David M. Schultz, and John P. Ryan, all of Hinshaw & Culbertson LLP, of Chicago, for appellee. |
| Panel | JUSTICE GARCIA delivered the judgment of the court, with opinion. Justices McBride and Palmer[1] concurred in the judgment and opinion. |

## OPINION

¶ 1     The circuit court granted the motions of plaintiff Asset Acceptance, LLC (Asset), to confirm an arbitration award and to dismiss defendant Terrence Tyler's five-count counterclaim. In its complaint, Asset alleged it was assigned Tyler's credit card debt. In an arbitration proceeding in which Tyler did not appear, Asset was awarded the full amount of the debt of $4,356.99. In proceedings before the court to confirm the award, in addition to various affirmative defenses and counterclaims, Tyler denied the existence of an agreement to arbitrate. Asset moved to confirm the award and to dismiss the affirmative defenses and counterclaims, arguing the defenses were forfeited when he failed to raise them during the statutory limitations period to contest the arbitration award and his counterclaims were subject to dismissal because they were improperly pled in an action to confirm an arbitration award. The court granted both motions. We affirm the circuit court's ruling that the counterclaims could not be asserted in a summary proceeding to confirm an arbitration award. However, we reverse the order confirming the arbitration award where Asset failed to make out a *prima facie* case to confirm the arbitration award when it did not produce the parties' written agreement to arbitrate as required by statute.

¶ 2                                    BACKGROUND

¶ 3     On April 26, 2007, Asset filed its complaint, seeking a judgment based on an arbitration award it received against Tyler. The complaint attached the written arbitration decision. Asset's complaint alleged the following. MBNA America Bank, N.A. (MBNA), entered into a credit card agreement with Tyler and Tyler incurred charges on the card. Asset purchased Tyler's credit card account with MBNA. After Tyler failed to pay his balance of over $4,000, Asset filed a demand for arbitration on January 15, 2007, with the National Arbitration Forum. On March 12, 2007, an arbitration hearing was held; Tyler did not participate. The

_____

[1]Justice Cahill served on the panel at oral argument. Justice Palmer replaced Justice Cahill following Justice Cahill's death on December 4, 2011.

arbitration decision recited, "On or before 01/15/2007 the Parties entered into a written agreement to arbitrate their dispute." The decision stated, "No Party has asserted that this Arbitration Agreement is invalid or unenforceable." The arbitrator awarded Asset the full amount claimed. When Tyler failed to timely challenge the award under the Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq.* (2006)), Asset filed a complaint in the circuit court, requesting judgment against Tyler in the amount of the arbitration award. The complaint had attached Asset's legal support supervisor's sworn affidavit in which he attested to the truthfulness of the balance Tyler owed to Asset. Before Tyler responded to the complaint, Asset filed a motion to confirm the arbitration award. Asset did not attach an arbitration agreement between MBNA and Tyler to its motion to confirm filed on March 11, 2008.

¶ 4    On March 13, 2008, Tyler filed an answer with affirmative defenses and counterclaims. In his answer, Tyler denied entering into a credit card agreement with MBNA. Tyler also asserted other affirmative defenses and five counterclaims. For his counterclaim relief, Tyler sought damages in excess of $50,000.

¶ 5    On June 11, 2008, Asset moved to strike Tyler's affirmative defenses and dismiss each of Tyler's counterclaims on various grounds. Asset attached two purported bank card documents to its motion to dismiss, each containing an arbitration clause. Premised on its right to arbitrate the dispute over credit card debt, Asset argued all of Tyler's claims were unavailing. Asset argued that Tyler's affirmative defenses were insufficient as a matter of law and his counterclaims were subject to dismissal with prejudice because (1) none was raised at arbitration proceeding as required by the arbitration clause and (2) the claims were barred by the 90-day limitation period set by the Illinois Uniform Arbitration Act (Illinois Act) (710 ILCS 5/2(b) (West 2010))[2] and the 3-month limitation period set by the FAA (9 U.S.C. § 12 (2006)).

¶ 6    In his June 30, 2008 response to Asset's motion to confirm the award, Tyler argued in part that Asset's motion should be denied because neither the arbitration decision nor the purported bank card agreements were authenticated.

¶ 7    In its reply, Asset asserted that Tyler was barred from challenging the arbitration award because he failed to move to vacate the award within the nearly identical limitation periods of the FAA and the Illinois Act. Further, Asset contended that the allegations in the complaint were verified by the legal support supervisor's affidavit attached to the complaint.

¶ 8    On July 18, 2008, Tyler filed a motion to strike Asset's motion to dismiss the counterclaims, arguing in part that Asset's motion, supported by the purported bank card agreements, was legally insufficient.

¶ 9    On March 12, 2009, the circuit court ordered Asset to file a supplemental brief "as to why

---

[2]Neither party argues the Illinois Act provides a separate basis for the positions taken in the respective briefs. Accordingly, we limit our discussion of the issues raised in this appeal to the FAA. See *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 477 (1989) ("state law may *** be pre-empted to the extent that it actually conflicts with federal law").

the arbitration award bars Tyler's counterclaims." In its supplemental brief, Asset argued that Tyler's counterclaims were time barred because they were filed well beyond the FAA's three-month limitation period to challenge an arbitration award. Asset claimed the limitation period began to run when notice of the arbitration award was mailed to Tyler on March 12, 2007; the counterclaims were not filed until March 13, 2008.

¶ 10 Asset also asserted it did not have to petition a court under section 4 of the FAA to compel Tyler to arbitrate the dispute. According to Asset, the arbitration agreement between MBNA and Tyler expressly provided that disputes are subject to arbitration pursuant to National Arbitration Forum (NAF) rules, which allow an arbitrator to issue an award even if the opposing party fails to appear at the arbitration hearing. Asset submitted Tyler's letter from February 2007 to confirm Tyler received notice of the arbitration proceeding, in which Tyler stated: "I'm very disturbed that I have received correspondence that you have filed an arbitration claim."

¶ 11 In Tyler's response to Asset's supplemental brief, he argued that Asset did not comply with the requirement in section 13 of the FAA that the underlying arbitration agreement be attached to the motion to confirm. Tyler also asserted section 4 of the FAA required Asset to file a court action to compel arbitration before it could proceed to an arbitration hearing. He argued that in the absence of a section 4 petition, Asset could not seek judicial confirmation of the arbitration award. Finally, Tyler contended the FAA's three-month limitation period did not apply to his claim that no agreement to arbitrate existed.

¶ 12 The circuit court dismissed all five counts of Tyler's counterclaim with prejudice, ruled Tyler's affirmative defenses were unavailable in a proceeding to confirm an arbitration award, and granted Asset's motion to confirm the arbitration award. The court denied Tyler's motion to reconsider. This timely appeal followed.

¶ 13                                                    ANALYSIS

¶ 14 Tyler challenges the rulings below on various fronts. First, he contends no *prima facie* case for confirmation was established by Asset because Asset did not present sufficient proof of an agreement to arbitrate under section 13 of the FAA. Second, Tyler asserts Asset was required to file a petition under section 4 of the FAA before proceeding to an arbitration hearing. Third, Tyler argues that the FAA's three-month limitation period to vacate an arbitration award does not apply to a party contending that no agreement to arbitrate exists. Fourth, Tyler argues that the circuit court erred in dismissing his counterclaims because Asset failed to support its motion to dismiss with an affidavit. Fifth, Tyler argues that the award lacks trustworthiness because the NAF proceeding was a fraud. Finally, Tyler argues that the circuit court erred when the court dismissed his counterclaim alleging violations of the Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. § 1692 *et seq*. (2006)) because the claim was independent of the action to confirm the arbitration award.

¶ 15 We address only those issues necessary to resolve this appeal. We first address Tyler's challenge to the proceedings before the NAF. We then address whether Tyler's counterclaims were properly pled in a proceeding to confirm an arbitration award, including his claim under the FDCPA. Next, we address whether section 4 of the FAA applies to the instant case. We

then address Tyler's contention that Asset did not make out a *prima facie* case to support its motion to confirm the arbitration award. Only if Asset made out a *prima facie* case to confirm the arbitration award would we need to address Tyler's claim that no arbitration agreement existed, a claim he contends he may assert beyond the statutory period for contesting arbitration awards under the FAA. We address each of the issues consistent with the briefs of the parties that focus on the FAA, rather than its counterpart the Illinois Act, which the parties do not dispute is for all practical purposes identical to the FAA on the issues presented.

¶ 16                                    1. Proceedings Under the NAF

¶ 17      Tyler argues that the entire proceeding before the NAF was a fraud. Tyler suggests that its fraudulent nature rendered futile any effort on his part to challenge the proceeding before the NAF. We disagree.

¶ 18      This is precisely the sort of claim that the FAA permits. Section 10 provides, in part, that an award may be vacated where the award was procured by fraud or where the arbitrators' misbehavior prejudiced the rights of a party. 9 U.S.C. §§ 10(a)(1), (a)(3) (2006). We find no difference between Tyler's claim that the NAF is a fraud and the challenges permitted under section 10(a)(1) or section 10(a)(3); nor does Tyler offer a difference.

¶ 19      Because Tyler's claim that the NAF proceeding was a fraud was the sort of claim permitted under section 10 of the FAA, Tyler was required to file that challenge "within three months after the award [was] filed or delivered" as prescribed by section 12 of the FAA. 9 U.S.C. § 12 (2006). In any event, Tyler fails to provide us with any authority to support his contention that he may raise his "fraud" claim in a proceeding to confirm the arbitration award, which renders this claim forfeited. "Points raised in a party's brief without *** relevant authority may be deemed waived." *Heatherly v. Rodman & Renshaw, Inc.*, 287 Ill. App. 3d 372, 379 (1997) (citing Ill. S. Ct. R. 341(e)(7) (eff. Aug. 1, 1988)).

¶ 20      The circuit court properly dismissed Tyler's blanket contention that the NAF proceeding was a fraud.

¶ 21                                        2. Counterclaims

¶ 22      Tyler insists his five-count counterclaim was improperly dismissed by the circuit court. Tyler contends Asset's failure to attach an affidavit to its motion to dismiss Tyler's five-count counterclaim precluded the dismissal. By implication, Asset contends no affidavit was legally required to establish the affirmative matters raised in its motion filed under section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)).

¶ 23      Our review of a dismissal based on a section 2-619 motion is *de novo*. *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 115 (2008). A section 2-619 motion to dismiss affords a "means of obtaining *** a summary disposition of issues of law or of easily proved issues of fact, with a reservation of jury trial as to disputed questions of fact." (Internal quotation marks omitted.) *Id.* at 120. Dismissal of a claim is appropriate when an affirmative matter bars or defeats a claim. *Id.* An affirmative matter encompasses any defense other than

a negation of the essential allegations of the cause of action. *Piser v. State Farm Mutual Automobile Insurance Co.*, 405 Ill. App. 3d 341, 344 (2010). An agreement to arbitrate is an affirmative matter that defeats claims that were required to be raised, but were not, in the arbitration proceeding. See *Hollingshead v. A.G. Edwards & Sons, Inc.*, 396 Ill. App. 3d 1095, 1101 (2009); *Griffith v. Wilmette Harbor Ass'n*, 378 Ill. App. 3d 173, 180 (2007). The failure to act within the time provided by law is likewise an affirmative matter. See *Hubble v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 267 (2010) (citing 735 ILCS 5-619(a)(5) (West 2006)).

¶ 24  Where the affirmative matter asserted is apparent on the face of a pleading, no affidavit is required to support a section 2-619 motion. *Sierens v. Clausen*, 60 Ill. 2d 585, 588 (1975). Even if an affidavit should have been filed, the absence of an affidavit may not be fatal. "[T]he Civil Practice Law *** needs to be construed liberally to fulfill its purpose of providing substantial justice and resolution on the merits, rather than imposing seemingly insurmountable procedural obstacles to litigation." *Doe v. Montessori School of Lake Forest*, 287 Ill. App. 3d 289, 296 (1997) (overlooking the failure to support section 2-619(a)(5) and section 2-619(a)(9) motions with affidavits). We turn to the reasons for the circuit court's dismissal of Tyler's five-count counterclaim.

¶ 25  "Actions to confirm arbitration awards *** are straightforward proceedings in which no other claims are to be adjudicated." *Ottley v. Schartzberg*, 819 F.2d 373, 377 (2d Cir. 1987). "[T]he Federal Arbitration Act allows arbitration to proceed with only a summary hearing and with restricted inquiry into factual issues." *Booth v. Hume Publishing, Inc.*, 902 F.2d 925, 932 (11th Cir. 1990). Counterclaims "that are beyond the scope of the defenses enumerated in the Act would change the nature of the confirmation proceedings and would defeat the purpose of the Act." *Id.* at 933.

¶ 26  In his counterclaim, Tyler asserted five counts. In the first counts, Tyler asserted that Asset violated (1) the FDCPA, (2) the Illinois Collection Agency Act (225 ILCS 425/1 *et seq.* (West 2008)), (3) the Illinois Interest Act (815 ILCS 205/1 *et seq.* (West 2008)), and (4) the Consumer Fraud and Deceptive Practices Act (815 ILCS 505/1 *et seq.* (West 2008)). In count V of the counterclaim, Tyler requested an accounting of his unpaid obligation.

¶ 27  It is uncontested that none of Tyler's counterclaims asserts a defense permitted under section 10 or 11 of the FAA to warrant consideration in the course of a motion to confirm an arbitration award. *Booth*, 902 F.2d at 932. By the express terms of the counts, each asserted a substantive claim that had no connection with a proceeding to confirm an arbitration award. The counterclaims were properly dismissed given the limited nature of the arbitration-based proceedings before the circuit court. See *id.* at 931; *Ottley*, 819 F.2d at 377.

¶ 28  Tyler nonetheless argues that count II of his counterclaim alleging a violation of the FDCPA is a cause of action independent of whether or not the arbitration award is or is not confirmed. He makes no similar claim as to the other three substantive counts. While Tyler maintains that his FDCPA claim was properly before the circuit court below, the claim is forfeited in the absence of supporting authority in his brief. *Heatherly*, 287 Ill. App. 3d at 379 (citing Ill. S. Ct. R. 341(e)(7) (eff. Aug. 8, 1988)).

¶ 29  The circuit court properly granted Asset's motion to dismiss each of Tyler's

counterclaims because the claims were not subject to adjudication in a proceeding to confirm an arbitration award, an affirmative matter apparent from the face of the motion.

¶ 30                                3. Section 4 of the FAA

¶ 31    Tyler next argues Asset was required to file a court action to compel arbitration under section 4 of the FAA before Asset could proceed with the arbitration hearing before the NAF. Consistent with the parties' briefs, we address whether the absence of a petition under section 4 of the FAA precluded the arbitration proceeding before the NAF. See *Bess v. DirectTV, Inc.*, 381 Ill. App. 3d 229, 234 (2008) (analyzing issue under section 4 of the FAA); but see *Valden v. Discover Bank*, 556 U.S. 49, 71 n.20 (2009) (the Supreme Court has not decided whether section 4 of the FAA applies to proceedings in state courts).

¶ 32    Under section 4 of the FAA, "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition *** for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4 (2006).

¶ 33    There is a split in the federal circuit courts of appeal on whether section 4 of the FAA permits or mandates a court order directing that arbitration proceed. Four circuits have held that the language in section 4 of the FAA providing for "an order directing that such arbitration proceed" is permissive. *Val-U Construction Co. of South Dakota v. Rosebud Sioux Tribe*, 146 F.3d 573, 580 (8th Cir. 1998); *Bernstein Seawell & Kove v. Bosarge*, 813 F.2d 726, 733 (5th Cir. 1987); *Standard Magnesium Corp. v. Fuchs*, 251 F.2d 455, 458 (10th Cir. 1957); *Kentucky River Mills v. Jackson*, 206 F.2d 111, 120 (6th Cir. 1953). A section 4 action is required "only in those cases where one party refuses to participate in the arbitration and a court order is necessary for the arbitration to proceed *ex parte*." *Standard Magnesium Corp.*, 251 F.2d at 458 (an example where a section 4 petition is mandated is an arbitration agreement that requires each party to appoint an arbitrator and one party refuses to do so).

¶ 34    The First Circuit Court of Appeals has ruled a section 4 action must precede all arbitration proceedings if a party has failed to participate in the arbitration hearing. "It is unlikely that Congress intended to allow the provisions of section 4 to be bypassed so easily" by a party initiating arbitration and prevailing by default. *MCI Telecommunications Corp. v. Exalon Industries, Inc.*, 138 F.3d 426, 430 (1st Cir. 1998). The reasoning in *MCI Telecommunications Corp.* on this point has been called into question. See, *e.g.*, *NCO Portfolio Management, Inc. v. Walker*, 2008-1011, at 12 (La. App. 3 Cir. 2/4/09); 3 So. 3d 628, 636 ("the *MCI* court appears to have a flaw in its logic. Section 4 permits ('may') but does not require ('must') a party to affirmatively petition the court for an order enforcing arbitration.").

¶ 35    The express language of section 4 also suggests that only a party "aggrieved" by the refusal to arbitrate need petition a court for an order directing arbitration. 9 U.S.C. § 4 (2006) ("A party aggrieved *** may petition *** for an [arbitration] order ***."). The language also makes clear that the ordered arbitration "proceed in the manner provided for in [the arbitration] agreement." *Id.* Thus, it is the terms of the arbitration agreement that control

whether a section 4 petition is mandated. *Standard Magnesium Corp.*, 251 F.2d at 458. It follows that if the rules of the arbitration forum provided for by the parties' agreement expressly permits *ex parte* proceedings, then section 4 of the FAA does not apply. *Id.* at 457 (a section 4 petition is permissive and therefore not always a prerequisite to proceed with arbitration and for an award to be valid); *Bernstein Seawell & Kove*, 813 F.2d at 733 ("The decision to submit a dispute to arbitration is left solely to the agreement of the parties to the contract, and they are bound by its provisions."); see also *Peregrine Financials & Securities v. Hakakha*, 338 Ill. App. 3d 197, 202-03 (2003) (section 4 of the FAA does not apply when neither party "refused" to arbitrate).

¶ 36 Here, we find no support for Tyler's implicit contention that Asset was an "aggrieved" party under section 4 of the FAA to compel court action before arbitration could go forward. It makes no sense that under section 4 a party is rendered "aggrieved" *after* the opposing party fails to appear at the arbitration proceeding. Also, the arbitration agreement, upon which Asset claims to have acted, provided that the arbitration would proceed according to NAF rules. The NAF rules allow *ex parte* arbitration proceedings. A party is not "aggrieved" within the meaning of section 4 simply by the failure of the opposing party to participate in an arbitration proceeding in the manner provided for in the arbitration agreement. 9 U.S.C. § 4 (2006); *Standard Magnesium Corp.*, 251 F.2d at 458; *Peregrine Financials & Securities*, 338 Ill. App. 3d at 202-03.

¶ 37 We also note that Tyler's February 2007 letter acknowledged that he received notice of Asset's intention to arbitrate its claim. Tyler did not contend that his consent to arbitration was required. Nor did Tyler expressly state that he would not appear at the arbitration hearing. There is no support in the record that Tyler's letter of February 2007 or his failure to appear at the arbitration equates with a *refusal* to arbitrate under section 4 of the FAA.

¶ 38 Because Asset was not an "aggrieved" party, it was not required to invoke section 4 of the FAA before proceeding to arbitrate its dispute with Tyler before the NAF.

¶ 39         4. *Prima Facie* Case for Confirmation

¶ 40 We now address Tyler's salient issue. Though related to his claim that no arbitration agreement existed between the parties, this issue differs regarding the party that carries the burden of proof, Asset as plaintiff or Tyler as defendant. Tyler contends that Asset failed to present a *prima facie* case for confirmation under section 13 of the FAA. In other words, Asset failed to carry its burden of proof that its motion to confirm was legally sufficient under section 13 of the FAA. As best we can tell, Asset's position is that what is present in the record was sufficient for the circuit court to rule in its favor on its motion to confirm the arbitration award: "The award specifically finds that there was a valid arbitration agreement, binding upon the parties, and that no one had contended otherwise."

¶ 41 The FAA supplies the mechanisms for the enforcement of arbitration awards. *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes–but only those disputes–that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). "[S]ubmission of disputes to [arbitration] is totally

dependent on the private will of the parties as embodied in whatever contract they may have entered into." *MCI Telecommunications Corp.*, 138 F.3d at 428. "The need for an agreement, or more accurately, one that is in writing, as [a] condition to gaining access to the umbrella provided by the FAA, manifests itself throughout the various provisions of this law." *Id.* at 429; see also *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, S.A.*, 312 F.2d 299, 300-01 (2d Cir. 1963) (district court correctly vacated arbitration award under sections 10 and 11 of the FAA where arbitrator improperly determined the rights of a party that was not a signatory to the arbitration clause).

¶ 42        The FAA requires the party seeking confirmation of an arbitration award to file its motion in the manner provided by law. 9 U.S.C. § 6 (2006) ("Any application to the court hereunder shall be made and heard in the manner provided by law ***."). The specific manner to confirm an arbitration award is set forth in section 13 of the FAA: "The party moving for an order confirming *** an award shall *** file the following papers with the clerk: (a) The agreement; *** (b) The award." 9 U.S.C. § 13 (2006). The standard of review of a circuit court's decision to confirm an arbitration award is *de novo*. *American Family Mutual Insurance Co. v. Stagg*, 393 Ill. App. 3d 619, 622 (2009).

¶ 43        In addition to the written arbitration decision, the record contains two papers attached to Asset's motion to dismiss Tyler's counterclaims, each of which contains an "arbitration clause." The first paper is unlabeled and bears no title; the second is titled "Credit Card Agreement Additional Terms and Conditions." Neither paper contains Tyler's name or his credit card account number. We understand Asset to contend that the two papers, along with the findings in the written arbitration decision, adequately support that an "arbitration agreement" existed between the parties for purposes of section 13 of the FAA.

¶ 44        Asset, however, also insists that Tyler's assertion that no arbitration agreement was ever presented below was foreclosed by his failure to raise the issue under the provisions of the FAA. Asset cites *Best Coin-Op, Inc. v. Clementi*, 120 Ill. App. 3d 892, 898-99 (1983), and *Mid-America Regional Bargaining Ass'n v. Modern Builders Industries Concrete Co.*, 101 Ill. App. 3d 83, 88 (1981), as authority. We disagree that the two cases address the precise issue we address now.

¶ 45        In *Mid-American Regional Bargaining Ass'n*, the court addressed the question of whether the defendant "can raise the issue of whether there was an agreement to arbitrate seven months after it had notice of the award." *Mid-American Regional Bargaining Ass'n*, 101 Ill. App. 3d at 84. Similarly, in *Best Coin-Op*, the issue was "whether defendants' alleged timely failure to assert any of the statutory grounds for vacatur of the arbitrator's award *** waived their right to challenge [the] award." *Best Coin-Op*, 120 Ill. App. 3d at 893. Each case analyzed the issue in terms of the burden of the party that lost at arbitration and sought to vacate the award. In contrast, Tyler contends that Asset failed to meet its burden to make out a *prima facie* case to confirm the award under section 13 of the FAA, which renders inapposite both *Mid-American Regional Bargaining Ass'n* and *Best Coin-Op*. Neither case guides our decision here.

¶ 46        The precise issue before us concerns Asset's burden to demonstrate it was entitled to have the arbitration award confirmed. The burden to challenge the arbitration award did not

shift to Tyler until Asset established a *prima facie* case. See *Morrison v. Flowers*, 308 Ill. 189, 195 (1923) ("A *prima facie* case is one *** established by evidence adduced by the plaintiff in support of his case ***."); *Getto v. City of Chicago*, 392 Ill. App. 3d 232, 239-40 (2009) (circuit court erred in shifting the burden of proof to the defendant at the conclusion of the trial); *Tepper v. County of Lake*, 233 Ill. App. 3d 80, 81 (1992) (circuit court erred in granting the defendant's motion for a directed finding when the plaintiff presented a *prima facie* case).

¶ 47    The issuance of a credit card is only an offer to extend credit; acceptance of the credit offer occurs each time a credit purchase is made by the cardholder. *Garber v. Harris Trust & Savings Bank*, 104 Ill. App. 3d 675, 684 (1982). Consistent with the treatment of each credit card purchase as a separate offer and acceptance, modifications to credit card terms are binding between the parties when, after notice of the modifications, the cardholder uses his credit card. *Id.*

¶ 48    We take the papers containing an arbitration clause Asset filed below to suggest that the dispute between MBNA (hence Asset) and Tyler regarding his credit card debt was subject to arbitration. Problematic for Asset, however, is that the papers provide no evidence that they pertain to Tyler's account; or that Tyler received the papers; or that Tyler agreed to the terms set forth in the papers by making a credit purchase after he was mailed the attached papers. See *FIA Card Services, N.A. v. Weaver*, 2010-1372, at 15 (La. 3/15/11); 62 So. 3d 709, 718 (where no credit card contract containing an arbitration clause was ever signed, credit card issuer had burden to demonstrate modifications to the terms of the credit agreement were sent to cardholder and cardholder "made at least one purchase after this date"). In fact, the papers do not support the conclusion that Tyler and MBNA entered into a contract to arbitrate their disputes. *MCI Telecommunications Corp.*, 138 F.3d at 428 (arbitration agreements are "embodied in whatever contract [the parties] may have entered into"). Under Illinois law, similar documents have been deemed insufficient to establish a contract. *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 299 (2010) (the bank's " 'Cardmember Agreement and Disclosure Statement' " was legally insufficient to collect on a credit card debt because the "Statement" was "not the written contract, as it offers no evidence that defendant agreed to be bound by these terms or that these terms even applied to this particular account").

¶ 49    Nor does Asset provide us with information as to when the attached papers became part of any credit card agreement by Tyler's use of the MBNA credit card. In fact, Asset failed to make any showing that the "arbitration clause" reflected in each of the papers predated Tyler's receipt of the initial offer of credit by MBNA. It could be that the attached papers came into existence after Tyler's last use of the MBNA credit card. See *FIA Card Services*, 2010-1372, at 14 (La 3/15/11); 62 So. 3d 709, 718 ("It is undisputed that the original agreement between [credit card holder] and MBNA contains no arbitration clause."). Asset failed to provide the information necessary to uphold the "arbitration clause" papers, spread of record, as the equivalent of the underlying agreement to arbitrate between the parties as required by section 13 of the FAA. *Id.*; see also *Velocity*, 397 Ill. App. 3d at 299 (the absence of the underlying written contract not sufficiently explained (citing 735 ILCS 5/2-606 (West 2006))).

-10-

¶ 50    Nor do the allegations in Asset's complaint fill in the gaps in the credit-offer-and-acceptance dates. Asset alleged that MBNA issued Tyler a credit card with a specific number, but failed to state when the credit card was issued. Asset alleged the "Defendant incurred charges by the use of the credit card," but failed to state the date of the last charge on the credit card. While Asset alleged that "[o]n or about January 15, 2007, the plaintiff (Asset) filed a Demand for arbitration with the National Arbitration Forum," the complaint does not state when Asset became the assignee of Tyler's credit card debt initially held by MBNA.

¶ 51    The written arbitration decision also leaves unanswered the question of when the purported arbitration agreement became incorporated in the credit agreement between MBNA and Tyler. The written arbitration decision from the NAF, which Asset properly submitted under section 13 of the FAA with its motion to confirm before the circuit court, states in paragraph 4 of the decision that "[o]n or before 01/15/2007 the Parties entered into a written agreement to arbitrate their dispute." While the "before" portion is undoubtedly accurate, it does nothing to confirm that an "agreement" to arbitrate between the parties existed prior to Tyler's last use of the MBNA credit card. See *FIA Card Services*, 2010-1372, at 14 (La. 3/15/11); 62 So. 3d 709, 718 ("It is undisputed that the original agreement between [credit card holder] and MBNA contains no arbitration clause."). Further, the allegation that Asset purchased Tyler's credit card debt from MBNA supports the conclusion that no written agreement to arbitrate ever existed between Asset and Tyler, contrary to the assertion in paragraph 4 of the written arbitration decision. Rather, to the extent a written agreement to arbitrate existed, the agreement must have been between MBNA and Tyler, and it is reasonable to conclude that MBNA never appeared before the NAF to provide information regarding when the arbitration agreement was entered into. It is also reasonable to conclude that Asset's demand for arbitration, which it filed on January 15, 2007, means Asset was assigned Tyler's MBNA credit card debt sometime before that date, rendering meaningless the assertion in the award that the parties entered into an agreement to arbitrate on or before January 15, 2007.

¶ 52    The streamlined proceedings provided in the FAA to favor resolution of disputes by arbitration work in both directions. See *Hubble*, 238 Ill. 2d at 268 (in construing a statute, "a court may properly consider *** the purpose and necessity for the law"). A defendant is limited to the challenges in sections 10 and 11 to seek a vacatur of an arbitration award. See *Ottley*, 819 F.2d at 377; *Booth*, 902 F.2d at 931. Similarly, a plaintiff seeking to confirm an arbitration award before the circuit court must comply with the relatively simple requirements of section 13 that it file with its motion to confirm "the agreement" and "the award" with the court. 9 U.S.C. § 13 (2006); *FIA Card Services*, 2010-1372 (La. 3/15/11); 62 So. 3d 709; *MBNA America Bank, N.A. v. Credit*, 132 P.3d 898, (Kan. 2006); *Yates v. CACV of Colorado, LLC*, 693 S.E.2d 629, 634 (Ga. Ct. App. 2010) (the plaintiff failed to meet its "burden of proving the existence of such a valid and enforceable agreement [to arbitrate]"). The interpretation of federal law by state courts may guide our interpretation of that same law. See *Hubble*, 238 Ill. 2d at 271-72 (the decisions of both federal and state courts interpreting the same federal law offer guidance).

¶ 53    We agree with the decision of the Louisiana Supreme Court that it is only upon the

presentation of both papers required by section 13 that a *prima facie* case is established to permit confirmation of an arbitration award. *FIA Card Services*, 2010-1372 (La. 3/15/11); 62 So. 3d 709. Though it would seem a simple matter to present the underlying arbitration agreement, cases do arise, just as in the case before us, where the existence of such an agreement is called into question. See *MBNA America Bank*, 132 P.3d at 902 ("[A] national trend [has arisen] in which consumers are questioning MBNA and whether arbitration agreements exist. [Citations.]").

¶ 54        In *MBNA American Bank*, the Kansas Supreme Court reached a result similar to the decision by the Louisiana Supreme Court. The Kansas high court concluded that the plaintiff's motion to confirm an arbitration award failed to meet its evidentiary burden. The court stated that MBNA's failure to attach a copy of the arbitration agreement alone "would have justified the district court in its decision to deny MBNA's motion to confirm the award." *Id.* at 901.

¶ 55        As the plaintiff in the proceeding before the circuit court to confirm the arbitration award, Asset bore the burden to make a *prima facie* case. See *Morrison*, 308 Ill. at 195 (it is the plaintiff's evidence that establishes a *prima facie* case). We cannot agree with Asset's claim that the award itself may satisfy this burden. To so rule would render the clear and unequivocal language in section 13 of the FAA that *two papers* be submitted with a motion to confirm an arbitration award meaningless. See *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 160 (2010) (statute should be construed so that no term is rendered "meaningless or superfluous"). Not surprisingly, Asset has presented us with no authority that both requirements under section 13 may be satisfied by submission of the written arbitration decision itself.

¶ 56        Nor do we agree with any suggestion that the affidavit attached to Asset's complaint was an adequate substitute for the requisite documentary showing under section 13 to confirm the arbitration award. See *Velocity*, 397 Ill. App. 3d at 299 (citing 735 ILCS 5/2-606 (West 2006)) (affidavit in record did not satisfy the requirement that the written contract be presented).

¶ 57        On the record before us, Asset failed to satisfy its burden to establish a *prima facie* case to confirm the arbitration award. Under section 13 of the FAA, Asset was required to file its motion to confirm with the written agreement to arbitrate that purportedly existed between MBNA and Tyler, along with the written arbitration decision. Absent the arbitration agreement, Asset was not entitled to a confirmation of the arbitration award it received against Tyler. The circuit court erred in confirming the arbitration award.

¶ 58        In light of our holding, we do not reach Tyler's claim that he could contest the very existence of an arbitration agreement with MBNA and its successor Asset in the course of a proceeding to confirm the arbitration award. See *MCI Telecommunications Corp.*, 138 F.3d at 430 ("no indication that Congress intended for a party to be found to have waived the argument that there was no written agreement to arbitrate if that party failed to raise the argument within the time period established by section 12 [of the FAA]").

-12-

¶ 59                              CONCLUSION

¶ 60        Tyler forfeited his claim that the arbitration proceedings before the NAF were a fraud
when he failed to assert that claim within the time limits of the FAA. Tyler's five-count
counterclaim was properly dismissed where the counterclaims were not subject to
adjudication in a proceeding to confirm the arbitration award. The circuit court erred,
however, in granting Asset's motion to confirm the arbitration award because Asset failed
to make out a *prima facie* case under section 13 of the FAA, which directs that the written
agreement to arbitrate between the parties be filed, a simple yet necessary requirement. We
reverse the circuit court's order confirming the arbitration award.

¶ 61        Affirmed in part and reversed in part.