# Illinois Official Reports

## Appellate Court

> ### *GPS USA, Inc. v. Performance Powdercoating*,
> ### 2015 IL App (2d) 131190

| | |
|---|---|
| Appellate Court Caption | GPS USA, INC., Petitioner-Appellant, v. PERFORMANCE POWDERCOATING, Respondent-Appellee. |
| District & No. | Second District<br>Docket No. 2-13-1190 |
| Filed | January 28, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's vacatur of the arbitration award entered for petitioner based on the improper invalidation of the forum-selection provision in the arbitration clause of the parties' contract was reversible error, since respondent failed to establish any compelling or countervailing reason for upsetting the parties' choice of Illinois as their arbitration forum, and in view of the trial court's failure to address all of the issues raised in respondent's motion to vacate the award for petitioner, the trial court's judgment was vacated and the cause was remanded for further proceedings. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 13-L-227; the Hon. Michael B. Betar, Judge, presiding. |
| Judgment | Vacated and remanded. |
| Counsel on Appeal | Ryan D. Johnson, of Johnson & Harris, LLC, of Buffalo Grove, for appellant.<br><br>No brief filed for appellee. |

| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion. |
|---|---|
| | Presiding Justice Schostok and Justice Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1     Petitioner, GPC USA, Inc., appeals the vacatur of an arbitration award entered in its favor against respondent, Performance Powdercoating. We hold that the trial court erred by invalidating the forum-selection provision in the arbitration clause of the parties' contract. Accordingly, we vacate the trial court's judgment and remand for further proceedings.

¶ 2                                        I. BACKGROUND

¶ 3     Respondent has filed no appellee's brief in this case. In *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976), the supreme court explained the avenues available to a reviewing court when an appellee fails to file a brief:

> "We do not feel that a court of review should be compelled to serve as an advocate for the appellee or that it should be required to search the record for the purpose of sustaining the judgment of the trial court. It may, however, if justice requires, do so. Also, it seems that if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal. In other cases if the appellant's brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record the judgment of the trial court may be reversed."

Appellate courts have distilled from this language the following three options: (1) the court may serve as an advocate for the appellee and decide the case when the court determines that justice so requires; (2) the court may decide the merits of the case if the record is simple and the issues can be easily decided without the aid of an appellee's brief; or (3) the court may reverse the trial court when the appellant's brief demonstrates *prima facie* reversible error that is supported by the record. *Village of Lake in the Hills v. Niklaus*, 2014 IL App (2d) 130654, ¶ 14 (citing *Thomas v. Koe*, 395 Ill. App. 3d 570, 577 (2009)). For the reasons set forth below, we find that petitioner's brief and the record demonstrate *prima facie* reversible error.

¶ 4     We base the following statement of facts on the pleadings and attachments filed below by the parties and on an unrebutted affidavit from Rebecca Presley, respondent's president and co-owner. Petitioner, which provides management consulting services, is a Nevada company with offices in Illinois. Respondent is an Arizona company. On March 14, 2012, the parties signed an "Agreement for Services" (Agreement) by which petitioner would provide respondent consulting services. Petitioner attached to its pleadings a series of consulting reports that it generated for respondent pursuant to the Agreement. The reports seem to suggest that petitioner's employees visited respondent's offices in Arizona for the purpose of

evaluating its business. According to Presley's affidavit, all work under the Agreement was performed in Arizona.

¶ 5 On October 16, 2012, petitioner filed a demand for arbitration with the American Arbitration Association. Petitioner sought amounts owed under the Agreement. There is a copy of the Agreement in the record. Near the bottom of the first page appears the following clause in bold: "Client and Advisor(s) expressly agree that all disputes of any kind between the parties arising out of or in connection with this Agreement shall be submitted to binding arbitration which would be administered by the American Arbitration Association." Immediately following in unbolded text is: "Exclusive jurisdiction and venue shall rest in Lake County, Illinois, Illinois law applying." With the exception of a title and petitioner's company logo at the top of the page, the text is of uniform size. All of the text on the page is legible and of reasonable size.

¶ 6 The matter was set for arbitration, and respondent was served with notice of the date (February 12, 2013) and location (a law office in Buffalo Grove, Illinois) of the hearing. Respondent did not appear on the scheduled date and the arbitration hearing proceeded in its absence. On February 21, 2013, the arbitrator entered an award in petitioner's favor of $129,999.90 plus respondent's share of the arbitration fees and expenses.

¶ 7 On April 1, 2013, petitioner filed in the trial court a petition to confirm the arbitrator's award. Respondent responded in May 2013 with a motion to dismiss the petition and vacate the award. First, respondent contended that the award was obtained through undue means. See 710 ILCS 5/12(a)(1) (West 2012) ("(a) Upon application of a party, the court shall vacate an award where: (1) The award was procured by *** undue means."). Respondent elaborated:

"4. The [respondent] *** is an Arizona LLC which has nothing to do with the State of Illinois. None of the events arising out of the underlying contract took place in Illinois and the contract was not signed in Illinois. ***

5. The only reason that the award was obtained was the [respondent] did not have the resources to defend an arbitration thousands of miles away in Illinois. The [respondent] would have had to fly all [its] employees to Illinois to testify, would have had to pay to have [its] evidence transferred to Illinois, and hire Illinois lawyers to defend an arbitration which had absolutely no conceivable reason for being in Illinois other than the fact that the [petitioner's] main office is in Lake County, Illinois. ***

6. Therefore, the arbitration was procured by undue means in that it was obtained solely because the burden to [respondent in] defending in Illinois made it impossible for [it] to do so."

¶ 8 Second, respondent cited section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2012) (involuntary dismissal based on certain defects or defenses)) and section 2-301(a) of the Code (735 ILCS 5/2-301(a) (West 2012) (objection to personal jurisdiction)), contending that the clause designating Illinois as the arbitration forum was unreasonable as a matter of law. Respondent applied the six-factor test adopted by the appellate court in *Calanca v. D&S Manufacturing Co.*, 157 Ill. App. 3d 85, 87-88 (1987), for determining the reasonableness of a forum-selection clause. The *Calanca* factors are: (1) which law governs the formation and construction of the contract; (2) the residency of the parties involved; (3) the place of execution and/or performance of the contract; (4) the

location of the parties and witnesses participating in the litigation; (5) the inconvenience to the parties of any particular location; and (6) whether the clause was equally bargained for. *Id.* at 88; see also *Yamada Corp. v. Yasuda Fire & Marine Insurance Co.*, 305 Ill. App. 3d 362, 368 (1999).

¶ 9   Third, and last, respondent asserted that the arbitrator lacked authority to decide the matter, because Illinois had no personal jurisdiction over respondent. See 710 ILCS 5/12(a)(3) (West 2012) ("(a) Upon application of a party, the court shall vacate an award where *** (3) The arbitrators exceeded their powers."). There was no general jurisdiction, respondent claimed, because it had no business contacts with Illinois. Specific jurisdiction also was lacking because respondent "never set foot in Illinois and did nothing more than forward payment to the [petitioner]."

¶ 10   In her affidavit, Presley averred in relevant part:

"5. I signed [the Agreement], which is the subject matter of this litigation, after the [petitioner] signed it[,] and I signed it in the State of Arizona. ***

6. [Respondent] is an Arizona Company.

7. [Respondent] does not do business in the State of Illinois.

8. All work performed under [the Agreement] was done at our office in Arizona.

9. All our witnesses for this matter reside in the State of Arizona.

10. There are only two owners of this business, my husband and myself.

11. We are a small mom and pop company[;] our financial records from last year are attached hereto.

12. Our company suffered a loss last year and[,] therefore, we cannot and could not afford the $3000 fee required of the Arbitrator.

13. We can also not afford to fly our witnesses and evidence to the State of Illinois for a [t]rial or arbitration.

14. When I signed [the Agreement], I did not know that if there was a dispute I would be forced to litigate in Illinois[,] as [the arbitration] clause was buried in the fine print.

15. [Respondent] does not transact any business in Illinois.

16. [Respondent] does not have any employees in Illinois.

17. [Respondent] does not have any property in Illinois.

18. None of [respondent's] employees ever visited Illinois.

19. *** [M]y only contact with Illinois was sending payments to the [petitioner's] office in Illinois.

20. *** [Respondent] does not have an office in Illinois.

21. *** [N]o one at [respondent] negotiated any of the terms of the contract[;] I just signed the form contract that was provided for me.

22. *** [A]ll consulting work done pursuant to the contract was done at our office in Arizona."

Though Presley referenced an attachment regarding respondent's finances, no such document appears in the record.

¶ 11     Petitioner filed a response. Petitioner began by noting that respondent, though duly notified of petitioner's demand for arbitration and of the scheduling of the arbitration hearing, lodged no advance objection to the arbitration. Petitioner then proceeded to challenge the substance of respondent's arguments for vacating the arbitration award. Petitioner filed no affidavit in response to Presley's affidavit.

¶ 12     In its reply, respondent made a new contention, namely, that the arbitrator's award was procured by fraud. In support, respondent submitted a second affidavit from Presley. She identified several pages from the consulting reports submitted by petitioner with its pleadings in the trial court. Presley implied that her initials and/or signatures on these pages were forged.

¶ 13     On August 14, 2013, the trial court held a hearing on respondent's motion (no transcript of the hearing appears in the record). That same day, the court issued a written order dismissing petitioner's petition and vacating the arbitration award. The court found as follows:

> "1. The forum selection clause is unenforceable pursuant to the six factors cited in *Calanca*;
>
> 2. Illinois does not have general jurisdiction over the [respondent] due to lack of minimum contacts;
>
> 3. Illinois does not have specific jurisdiction over the [respondent] due to lack of minimum contacts."

The court appeared not to reach respondent's claims that the arbitration award was obtained by undue means and fraud.

¶ 14     The trial court denied petitioner's motion to reconsider, and petitioner filed this timely appeal.

## II. ANALYSIS

¶ 16     Petitioner contends that the trial court erred in vacating the arbitration award. We agree.

¶ 17     "It is a well-established principle that arbitration is a favored alternative to litigation by state, federal and common law because it is a speedy, informal, and relatively inexpensive procedure for resolving controversies arising out of commercial transactions." (Internal quotation marks omitted.) *Board of Managers of the Courtyards at the Woodlands Condominium Ass'n v. IKO Chicago, Inc.*, 183 Ill. 2d 66, 71 (1998). "The Illinois Uniform Arbitration Act embodies a legislative policy favoring enforcement of agreements to arbitrate future disputes." *Salsitz v. Kreiss*, 198 Ill. 2d 1, 13 (2001). "The courts of this state favor arbitration as well." *Id.*

¶ 18     The favorability of arbitration is further reflected in the principles governing judicial review of arbitration awards:

> "[J]udicial review of an arbitrator's award is extremely limited, more limited than appellate review of a trial. [Citations.] Limited judicial review fosters the long-accepted and encouraged principle that an arbitration award should be the end, not the beginning of litigation. [Citation.] When parties agree to submit a dispute to arbitration for a binding and nonappealable decision, they bargain for finality. [Citation.] The point of arbitration is to provide a quick and economical alternative to litigation, not to add yet another round before entering the district and appellate

courts. [Citation.]" (Internal quotation marks omitted.) *First Health Group Corp. v. Ruddick*, 393 Ill. App. 3d 40, 48 (2009).

¶ 19 Section 12 of the Uniform Arbitration Act (Act) (710 ILCS 5/12 (West 2012)) specifies grounds for vacating an arbitration award, stating in relevant part:

"(a) Upon application of a party, the court shall vacate an award where:

(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of Section 5 [(710 ILCS 5/5 (West 2012))], as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under Section 2 [(710 ILCS 5/2 (West 2012))] and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by the circuit court is not ground for vacating or refusing to confirm the award."

¶ 20 We turn to our standard of review. We have no transcript of the hearing on the motion to vacate, but it appears that no testimony was offered and that the trial court made its decision based on the pleadings, documentary exhibits, and Presley's unrebutted affidavit. Consequently, we are presented with a question of law and our review is *de novo*. See *Rosenthal-Collins Group, L.P. v. Reiff*, 321 Ill. App. 3d 683, 687 (2001) (review of section 12 decision was *de novo* because "the trial court heard no testimony and ruled solely on the basis of documentary evidence"); *In re Estate of Funk*, 221 Ill. 2d 30, 35 (2006) (citing *Reiff* and applying the *de novo* standard because "[t]he issues presented *** turn[ed] on the documentary evidence and on questions of law").

¶ 21 Petitioner's first contention on appeal is that respondent forfeited "its objections by failing to file an initial motion with the circuit court and by refusing to participate in the arbitration." In fact, as we shall explain, it was by not participating in the arbitration that respondent was able to preserve its challenge to the validity of the arbitration agreement.

¶ 22 Between its motion to vacate and its reply in support thereof, respondent made the following four contentions. First, the arbitration award was obtained through undue means because respondent would have participated in the arbitration in Illinois had it not posed such a hardship. Second, the award was obtained by fraud because the documents on which petitioner relied bore the forged signatures and initials of Presley, respondent's president and co-owner. Third, the forum-selection component of the arbitration clause was invalid. Fourth, the arbitrator exceeded his powers because Illinois lacked personal jurisdiction over respondent.

¶ 23 The trial court determined, first, that the forum-selection clause was invalid, and, second, that Illinois lacked personal jurisdiction over respondent. The court appeared not to reach respondent's claims that the arbitration award was obtained by undue means and fraud.

¶ 24    We address first the court's ruling on the forum-selection clause, because if the clause was valid the requirements of personal jurisdiction were met. "A forum selection clause in a given agreement has been held sufficient to constitute consent to personal jurisdiction in a foreign State." *ETA Trust v. Recht*, 214 Ill. App. 3d 827, 834 (1991).

¶ 25    Petitioner claims, as it did below, that respondent forfeited its challenge to the forum-selection clause by failing to raise it at any time before the award was entered. Petitioner also challenges, as it did below, the merits of the trial court's decision on the forum-selection issue. However, petitioner has not questioned, in the trial court or before us, that respondent's challenge to the forum-selection clause was substantively cognizable in a proceeding under section 12. While respondent did not invoke below a subsection of section 12 in challenging the clause, the substance of that contention fell under subsection (a)(5), which permits, with certain procedural conditions, a claim that "[t]here was no arbitration agreement" (710 ILCS 5/12(a)(5) (West 2012)). Respondent's attack on the forum-selection component implicated the arbitration clause as a whole, since respondent claimed, *inter alia*, that the parties had unequal bargaining power in negotiating the Agreement and that the terms regarding arbitration were hidden in fine print. We note that, in a section 12(a)(5) proceeding, just as in a section 2 proceeding to compel or stay arbitration, the issue of arbitrability extends not just to the bare existence of an agreement purporting to mandate arbitration, but also to whether the agreement is valid and enforceable. *IKO Chicago, Inc.*, 183 Ill. 2d at 74 (under section 2, "once the trial court determines that a valid arbitration agreement exists, the court must compel arbitration"); *Best Coin-Op, Inc. v. Clementi*, 120 Ill. App. 3d 892, 897-98 (1983) (validity of lease containing an arbitration clause could be contested under section 12(a)(5)).

¶ 26    Proceeding to the forfeiture issue, we reiterate that section 12(a)(5) permits a postaward challenge that "[t]here was no arbitration agreement," provided that the issue "was not adversely determined in proceedings under Section 2 [(710 ILCS 5/2 (West 2012))] and the party did not participate in the arbitration hearing without raising the objection" (710 ILCS 5/12(a)(5) (West 2012)).

¶ 27    The procedural conditions specified in section 2 were satisfied here. First, there was no section 2 proceeding, or at least none appears of record. Second, respondent did not participate in the arbitration.

¶ 28    The cases petitioner cites where forfeiture was found are distinguishable because the party attacking the arbitration award had participated in the arbitration without raising the particular objection. See *Ruddick*, 393 Ill. App. 3d at 48-49; *Hamilton v. Williams*, 214 Ill. App. 3d 230, 247 (1991); *Tri-City Jewish Center v. Blass Riddick Chilcote*, 159 Ill. App. 3d 436, 439 (1987).

¶ 29    A more factually similar case is *Mid-America Regional Bargaining Ass'n v. Modern Builders Industrial Concrete Co.*, 101 Ill. App. 3d 83 (1981). The defendant in *Mid-America* was a member of a contractors' association that acted as the defendant's representative for collective bargaining. The association in turn signed a representation agreement with the plaintiff. A dispute arose when the plaintiff accused the defendant of violating its bylaws. The plaintiff notified the defendant that it was seeking arbitration pursuant to a clause in the representation agreement. The defendant refused to attend the arbitration hearing but later opposed confirmation of the award, on the ground that it had no agreement with the plaintiff to arbitrate. The trial court declined to confirm the award, but the appellate court reversed.

Commenting on the Act generally, the court remarked that "before there can be arbitration there must be a valid arbitration agreement." *Id.* at 86. Section 12(a)(5) clearly provided, said the court, that "the question of arbitrability may be raised after the award is issued, if, as here, it was not raised before the hearing." *Id.* at 87. The court held that the defendant forfeited his argument on arbitrability, but not because it failed to raise the issue before the arbitration hearing. Rather, the defendant failed to challenge the arbitration award within the time constraints of section 12(b) of the Act (710 ILCS 5/12(b) (West 2012) ("An application under this Section shall be made within 90 days after delivery of a copy of the award of the applicant, except that if predicated upon corruption, fraud or other undue means, it shall be made within 90 days after such grounds are known or should have been known.")). (In the present case, there is no issue of timeliness under section 12(b).)

¶ 30    As in *Mid-America*, respondent here preserved the issue of arbitrability for a postaward challenge because it "did not participate in the arbitration hearing without raising the objection" (710 ILCS 5/12(a)(5) (West 2012)). Like the defendant in *Mid-America*, respondent did not participate in the arbitration at all.

¶ 31    *Anderson v. Golf Mill Ford, Inc.*, 383 Ill. App. 3d 474, 479 (2008), cited by petitioner, deserves special comment because the appellate court found forfeiture of an arbitrability issue even though the issue was not decided in a section 2 proceeding *and* the party raised the arbitrability objection before the arbitrator. The parties in *Anderson* agreed to arbitrate according to the rules of the American Arbitration Association (AAA rules). The plaintiff filed a demand for arbitration, and the defendant filed a counterclaim. The plaintiff denied the allegations of the counterclaim but did not challenge its arbitrability. Not until the arbitration hearing did the plaintiff object that the counterclaim was not arbitrable. The arbitrator overruled the objection and ruled on the merits of the counterclaim. The appellate court agreed with the defendant that the plaintiff forfeited its arbitrability objection by not raising it prior to the arbitration hearing. The court relied on the AAA rules, which required that a party object to the arbitrability of a counterclaim no later than the party's answer to the counterclaim. *Id.* at 478-79.

¶ 32    Petitioner extrapolates from *Anderson* a general rule that a party must object to the arbitrability of a claim no later than the filing of the answer. This is a flawed reading of *Anderson*'s holding, which was based on the particular procedural rules that the parties agreed would govern the arbitration. Petitioner cites no such rules here. We express no comment on *Anderson*'s presumption that arbitration rules can override the conditions specified in section 12(a)(5) for preserving an arbitrability objection for a postaward challenge.

¶ 33    Petitioner also claims that the issue of the forum-selection clause's validity pertained merely to the venue for the arbitration, and therefore the issue was for the arbitrator, not the court, to decide. According to petitioner, "it is for the court to determine whether a valid arbitration clause exists," and "[o]nce that determination has been made, the arbitrator decides *how and where* the arbitration will be conducted" (emphasis added). Petitioner cites a string of federal cases under the Federal Arbitration Act (9 U.S.C. § 1 *et seq.* (2012)) holding that "disputes over the interpretation of forum selection clauses in arbitration agreements" are procedural questions for the arbitrator to decide (*UBS Financial Services, Inc. v. West Virginia University Hospitals, Inc.*, 660 F.3d 643, 655 (2d Cir. 2011) (citing cases)).

¶ 34 These decisions do not apply here. First, they involve a different arbitration statute than what governs here. Section 12 of the Act specifies what avenues are permissible for attacking an arbitration award. Respondent's challenge to the forum-selection clause was substantively cognizable in a postaward proceeding, as it challenged the validity of the arbitration clause. Moreover, since respondent did not participate in the arbitration, it need not have raised the issue before the trial court *or* the arbitrator. Second, respondent raised no question of the interpretation of the forum-selection clause, but only a question of its validity. The validity of an arbitration clause is determined by the court, not the arbitrator. See *IKO Chicago, Inc.*, 183 Ill. 2d at 74 (under section 2, "once the trial court determines that a valid arbitration agreement exists, the court must compel arbitration").

¶ 35 For the foregoing reasons, we hold that, according to the criteria of section 12(a)(5), respondent preserved its challenge to the validity of the forum-selection clause.

¶ 36 We proceed to the merits of respondent's challenge. At the outset, we note that the arbitration clause in the Agreement reflects two choices by the parties: one, that the arbitration will occur in Illinois, and, two, that Illinois law will apply. In the court below, respondent made no direct attack on the choice-of-law provision, but did, in the course of attacking the forum-selection provision, raise the matter of Illinois's connection to the underlying dispute.

¶ 37 "A forum selection clause in a contract is *prima facie* valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances." (Internal quotation marks omitted.) *Compass Environmental, Inc. v. Polu Kai Services, L.L.C.*, 379 Ill. App. 3d 549, 554-55 (2008). "The burden of proving the unreasonableness of a selected forum *** falls on the party opposing enforcement of the forum selection clause." *Brandt v. MillerCoors, LLC*, 2013 IL App (1st) 120431, ¶ 18. That party must show "that trial in the contractual forum will be so gravely difficult and inconvenient that [the party] will for all practical purposes be deprived of his day in court." (Internal quotation marks omitted.) *Calanca*, 157 Ill. App. 3d at 87-88. Courts are particularly reluctant to void a forum-selection clause on inconvenience grounds where "both parties freely entered the agreement contemplating such inconvenience should there be a dispute." *Id.* at 88. "A forum selection agreement reached through arm's-length negotiation between experienced and sophisticated businesspeople should be honored by them and enforced by the courts, absent some compelling and countervailing reason for not enforcing it." *IFC Credit Corp. v. Rieker Shoe Corp.*, 378 Ill. App. 3d 77, 86 (2007).

¶ 38 The factors from *Calanca* for determining the validity of a forum-selection clause are: (1) which law governs the formation and construction of the contract; (2) the residency of the parties involved; (3) the place of execution and/or performance of the contract; (4) the location of the parties and witnesses participating in the litigation; (5) the inconvenience to the parties of any particular location; and (6) whether the clause was equally bargained for. *Calanca*, 157 Ill. App. 3d at 88.

¶ 39 We begin with factor (6), since if the Agreement's forum-selection clause was the subject of arm's-length negotiation between parties with equal bargaining power, we are to enforce the clause absent a compelling and countervailing reason to the contrary. *IFC Credit Corp.*, 378 Ill. App. 3d at 86. Respondent bore the burden of proving the clause unreasonable, but respondent gave no indication that it lacked the necessary sophistication to negotiate a more favorable forum. In her affidavit, Presley averred that no representative of respondent

negotiated the terms of the Agreement, but rather Presley "just signed the form contract that was provided for [her]." A failure to negotiate, however, does not equate to an inability to do so. Nor does Presley's assertion that respondent is "a small mom and pop company" reveal anything about respondent's capacity to bargain.

¶ 40 Respondent also claimed below that its disadvantage during the contract-formation process was evident in the fact that the arbitration clause was in small print. We do not accept this characterization. The copy of the Agreement in the record shows the arbitration clause on the first page. The body of the text on that page is all the same, reasonable size. Also, the arbitration clause is partly bolded. The ordinary reader would surely have noticed the clause.

¶ 41 Having no reason to doubt that the parties had equal bargaining power, we apply the remaining factors with a view to whether respondent presented a compelling reason for voiding the parties' forum selection. Notably, since respondent had the burden to prove the forum choice unreasonable, any factor that is even neutral on the forum question essentially weighs in favor of the forum choice.

¶ 42 On factor (1), concerning which state's law governs the formation and construction of the contract, respondent asserted below that Arizona law governed because, as Presley averred, she signed the Agreement last and did so from respondent's Arizona's office. "Therefore," respondent concluded, "the contract was formed in Arizona and any issues relating to construction or formation would be governed by Arizona law." Petitioner agrees that the Agreement "was executed in Arizona," but argues that factor (1) still favors an Illinois forum because of the choice-of-law provision designating Illinois law to govern disputes arising from the Agreement. We agree with this position. Where the parties choose a particular state's law, the sensible forum for adjudication is that state. See *Brandt*, 2013 IL App (1st) 120431, ¶ 14; *Yamada*, 305 Ill. App. 3d at 368; *Calanca*, 157 Ill. App. 3d at 88. In the court below, respondent's argument on factor (1) focused on signatures while utterly ignoring the choice-of-law provision. Factor (1), we conclude, does not weigh against the parties' forum choice.

¶ 43 As for factor (2), the residency of the parties, respondent proposed that the factor was neutral because petitioner is a Nevada company while respondent is an Arizona company. See *Yamada*, 305 Ill. App. 3d at 368 ("A corporation is a resident of the state or country under whose laws it was organized."). Petitioner agrees that factor (2) is neutral, as do we. However, since the factor is neutral, it does not weigh against the chosen forum.

¶ 44 On factor (3), the place of execution and/or performance of the contract, petitioner concedes that, "[b]ecause the Agreement was executed in Arizona, [respondent's] home state does have some interest in resolving this dispute." As for the place of performance, Presley averred that "all the consulting work done pursuant to [the Agreement] was done at [respondent's] office in Arizona." Petitioner did not rebut this averment. Nonetheless, the fact that the parties freely chose Illinois law to govern diminishes the significance of Arizona's connection to this dispute. We conclude that factor (3) is neutral and, at best, weighs only slightly against Illinois as forum.

¶ 45 On factor (4), the location of the parties and witnesses participating in the litigation, respondent argued below that the factor was neutral because petitioner would have witnesses in Illinois and respondent would have witnesses in Arizona. We disagree that the factor is neutral. Respondent, which had the burden in its forum-selection challenge, did not demonstrate the unavailability of alternatives to physical travel of witnesses, such as

evidence depositions and videotaped testimony. See *Brandt*, 2013 IL App (1st) 120431, ¶ 17; *Calanca*, 157 Ill. App. 3d at 89. Factor (4) does not weigh against the forum choice.

¶ 46 Factor (5) concerns the inconvenience to the parties of any particular location. Respondent had a high burden in claiming inconvenience, particularly since, as we have determined, the forum-selection clause was the product of free bargaining. Respondent claimed that, because of financial constraints, it "would not be able to mount a defense in Illinois." Respondent relied on Presley's averments that respondent (1) is a "small mom and pop company"; (2) suffered a financial loss the prior year; (3) "cannot and could not afford the $3000 fee required of the Arbitrator"; and (4) cannot "afford to fly [its] witnesses and evidence to the State of Illinois for a [t]rial or arbitration." We cannot assess respondent's fiscal condition, because the financial records Presley claimed to have attached to her affidavit are not in the record. Also, it is not clear if the $3,000 fee relates to arbitration in Illinois particularly. Moreover, respondent has failed, as we noted, to demonstrate that it could not spare its witnesses travel to Illinois through use of alternatives like evidence depositions and videotaped testimony. Finally, while respondent complained that transferring its evidence to Illinois would have been a hardship, respondent was not specific about the nature or quantity of evidence required for the arbitration.

¶ 47 Having applied the *Calanca* factors, we conclude that respondent did not establish any compelling or countervailing reason for upsetting the parties' choice of Illinois as their arbitration forum. The only factor that potentially weighs against the choice of Illinois as forum is that the Agreement was signed, and the contemplated services performed, in Arizona. Depreciating the weight of this factor, however, is the fact that the parties agreed to apply Illinois law to their dispute. Under our *de novo* standard of review, we hold that the trial court committed *prima facie* reversible error in invalidating the forum-selection clause.

¶ 48 The valid forum-selection clause satisfies jurisdictional requisites. Consequently, we need not address petitioner's challenge to the trial court's secondary finding that Illinois lacked personal jurisdiction over respondent.

¶ 49 As the trial court apparently did not address all issues raised in respondent's motion to vacate the arbitrator's award, we remand for further proceedings on the motion.

¶ 50                                    III. CONCLUSION

¶ 51 For the foregoing reasons, we vacate the judgment of the trial court and remand this matter for further proceedings consistent with this opinion.

¶ 52 Vacated and remanded.