# Illinois Official Reports

## Appellate Court

*In re Marriage of Haleas*, 2017 IL App (2d) 160799

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF PETER J. HALEAS, Petitioner-Appellee, and FANEE HALEAS, Respondent-Appellant. |
| District & No. | Second District<br>Docket No. 2-16-0799 |
| Filed | April 13, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 14-D-504; the Hon. Karen M. Wilson, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Tracy Brdar Demaj and Steven M. Laduzinsky, of Laduzinsky & Associates, P.C., of Chicago, for appellant.<br><br>Nicholas R. Galasso and Nicholas J. Galasso, of Galasso, P.C., of Wheaton, for appellee. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion.<br>Justices Schostok and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1       On March 14, 2014, petitioner, Peter J. Haleas, filed a petition for dissolution of his marriage to respondent, Fanee Haleas. Ultimately, the parties agreed to resolve their property and maintenance issues through binding arbitration. On August 9, 2016, the trial court confirmed the arbitration award, and on August 24, 2016, it entered a final judgment for dissolution of the marriage, incorporating the award. Respondent appeals, arguing that the arbitrator erred in finding that certain business interests were petitioner's nonmarital property and in determining the amount and duration of maintenance. For the following reasons, we affirm.

¶ 2                                   I. BACKGROUND

¶ 3       Petitioner (age 57) is the chairman of Bridgeview Bancorp (Bancorp) and Bridgeview Bank Group (BBG). The parties began dating in 2002, shortly after respondent (age 58) became employed by BBG as vice president of commercial lending. The parties married on July 8, 2006. They both have children from previous marriages, but no children were born to or adopted by them during the marriage.

¶ 4       On March 14, 2014, petitioner petitioned to dissolve the marriage. Respondent filed a counter-petition and also a petition for temporary maintenance. On June 5, 2014, the trial court ordered petitioner to pay to respondent (1) $7500 monthly in temporary maintenance; (2) $10,000 for travel expenses; (3) all expenses related to the marital residence; and (4) other personal expenses, such as health insurance, medical bills, and car payments. At that time, respondent remained employed by BBG, earning more than $100,000 annually. In addition, respondent received from BBG health insurance benefits and payment for various monthly expenditures. However, on May 28, 2015, BBG terminated respondent's employment. Respondent thereafter petitioned the trial court for emergency relief, and on September 21, 2015, the court ordered petitioner to pay respondent an additional $5000 monthly, for a total of $12,500 in monthly maintenance.

¶ 5       Prior to trial, the parties decided to submit certain issues to arbitration. According to respondent, "[o]n or about January 11, 2016, the parties entered into a Mediation/Arbitration Agreement pursuant to the Illinois Uniform Arbitration Act [(Arbitration Act)], 710 ILCS 5/1 [*et seq.* (West 2014)]." Petitioner agrees that, "[i]n lieu of trial, the parties agreed to engage in binding arbitration, which was expressly subject to the [Arbitration Act]." The parties' agreement has apparently not been included in the record on appeal.[1] The trial court later reported, however, that the parties had agreed to binding arbitration with respect to their property and maintenance issues, and the parties do not dispute that representation.

¶ 6       Thus, the matter proceeded to arbitration before the "Honorable Michele F. Lowrance (Ret.)" of JAMS arbitration. Both parties were represented by counsel. After five days of hearing and the presentation of "a substantial amount of evidence and testimony," on June 20,

---

[1]To the extent that the agreement is relevant to resolving the issues on appeal, its absence is construed against respondent. *In re Edgar C.*, 2014 IL App (1st) 141703, ¶ 82 ("[i]t is the appellant's burden to provide this court with a sufficient record to grant the relief he [or she] requests on the claims that he [or she] raises," and if he or she "fails to do so, we will resolve all doubts arising from incompleteness against the appellant").

2016, the arbitrator issued a 70-page decision. In the decision, the arbitrator expressed that the arbitration was conducted pursuant to Illinois law and, specifically, that the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/101 *et seq.* (West 2014)) applied to the issues arbitrated.

¶ 7    The arbitrator commenced her analysis by noting that she found "greatly concerning" instances where respondent "presented a distortion of the facts" and that, although respondent had proffered "elaborate arguments," respondent failed to substantiate her claims with evidence. Before making written findings, the arbitrator explained:

"The factual findings that follow are necessary to the [a]ward. They are derived from the admissions in the pleadings and the testimony and evidentiary exhibits presented at the hearing. To the extent that these findings differ from any party's positions, that is the result of determinations by the [a]rbitrator as to the credibility and relevance, burden of proof considerations, legal principles, and the weigh[ ]ing of the evidence, both oral and written."

¶ 8    As relevant to the issues respondent raises on appeal, the arbitrator rejected respondent's arguments concerning petitioner's income, noting that not all of the deposits into petitioner's accounts constituted "income" under the Marriage Act. The arbitrator found that petitioner had obtained from various financial institutions *bona fide* loans and that, given that he must repay them, the loans did not enhance petitioner's wealth. The arbitrator found that petitioner's income in 2016 totaled $325,000. Further, the arbitrator found that specific business interests were nonmarital property and that some of those interests were entirely encumbered and pledged as collateral for "substantial amounts of debt to the State Bank of Texas" (*i.e.*, an $8,864,335 debt).

¶ 9    As relevant to the maintenance award, the arbitrator found that respondent had received both bachelor's and graduate degrees and had been employed in the banking industry from 1986 through May 2015; in that period, respondent earned more than $100,000 annually. The arbitrator found that respondent had intentionally not filed for unemployment benefits. Further, the arbitrator found that respondent had submitted to the arbitrator multiple copies of identical job submissions, in an attempt to misrepresent her efforts to seek new employment, and that respondent had not made a good-faith effort to secure new employment. The arbitrator noted that, since the commencement of the dissolution proceedings, respondent had received from petitioner monthly maintenance in the amount of $7500 (from June 2014 to September 2015) and $12,500 (from September 2015 through the arbitration). Moreover, the arbitrator found that respondent's claims of health problems were unsupported by any evidence and, as presented, did not impede her ability to work.

¶ 10    Thereafter, however, the arbitrator applied the 14 factors delineated in section 504(a) of the Marriage Act (750 ILCS 5/504(a) (West Supp. 2015)) and found that maintenance to respondent remained warranted. Moreover, the arbitrator rejected petitioner's argument that, to determine the amount of the maintenance award, she must apply the guideline mathematical formula under section 504 of the Marriage Act, noting that the formula did not apply to a case such as this, where the parties' combined gross income exceeds $250,000. Further, the arbitrator rejected petitioner's request for a $196,390 credit for maintenance already paid, although she noted that the amount of maintenance already paid was a factor she considered in assessing the future maintenance award.

¶ 11   The arbitrator found that it would be impossible for either party to maintain the standard of living that they had enjoyed in the early years of their marriage. Further, the arbitrator found applicable to the maintenance determination section 504(b-4.5) of the Marriage Act, which provides that fixed-term "permanent termination" maintenance may be ordered when a marriage lasted less than 10 years,[2] and that the marriage here lasted seven years and eight months.[3] 750 ILCS 5/504(b-4.5) (West 2014). The arbitrator ordered, pursuant to section 504(b-4.5), fixed-term, permanent-termination maintenance for 37 months as follows: (1) $7000 monthly from July 2016 through June 2017, (2) $6000 monthly from July 2017 through June 2018, (3) $5000 monthly from July 2018 through June 2019, and (4) $5000 in July 2019. In addition, petitioner was ordered to pay to respondent 20% of any employment bonus he received in 2016 and 10% of any such bonus in 2017. Further, petitioner was ordered to pay $82,315.50 of respondent's legal fees. In addition to the maintenance, respondent was awarded jewelry gifted to her by petitioner, with an estimated value of $682,289; her bank accounts; 50% of the marital household furnishings; 75% of the equity from the sale of the parties' Hinsdale residence; a BMW automobile (subject to a $13,000 lien); and $7944.99, representing the marital portion of a reimbursement to a 401(k) retirement account. Respondent was ordered to reimburse petitioner for half of the arbitration fees ($14,432.50) and to pay $27,438.50 of her own legal fees, and she remained responsible for any other personal debts.

¶ 12   Petitioner was awarded his nonmarital personal property and nonmarital business interests in Bancorp, BBG, and two other business ventures. He was awarded 6657 shares of nonmarital Bancorp stock (again, with the arbitrator having noted that petitioner's interests in certain ventures were entirely encumbered and pledged as collateral for debt owed to the State Bank of Texas in the amount of $8,864,335, for which petitioner remained solely responsible). In addition, petitioner remained responsible for repaying certain loans and for any other personal debts.

¶ 13   Petitioner moved the trial court to confirm the arbitration award. Respondent filed a response. She requested that the court not confirm the award with respect to the arbitrator's finding that petitioner's interest in a certain company was nonmarital and with respect to the terms of the maintenance award, which she claimed was unconscionable because, in part, it had a permanent termination date. She acknowledged, however, that the Marriage Act provides for such an award.

¶ 14   On August 9, 2016, the trial court confirmed the award, finding first that "the parties agreed to and did enter into binding arbitration." The court stated that it had "reviewed the arbitration award and does not find the arbitration award unconscionable, and the arbitration

---

[2]The relevant section of the Marriage Act provides:

"Fixed-term maintenance in marriages of less than 10 years. If a court grants maintenance for a fixed period under subsection (a) of this Section at the conclusion of a case commenced before the tenth anniversary of the marriage, the court may also designate the termination of the period during which this maintenance is to be paid as a 'permanent termination'. The effect of this designation is that maintenance is barred after the ending date of the period during which maintenance is to be paid." 750 ILCS 5/504(b-4.5) (West 2014).

[3]The arbitrator rejected respondent's argument that the marriage's duration was more than 10 years because the parties cohabitated before they were married.

award will be confirmed." On August 24, 2016, the trial court entered a final dissolution judgment, incorporating the arbitration award. Respondent appeals.

¶ 15                                                    II. ANALYSIS

¶ 16     On appeal, respondent argues that the arbitrator erred in finding that petitioner's purchase of a business interest was nonmarital and that petitioner should be estopped from raising certain arguments concerning that purchase. Further, respondent argues that the arbitrator erred in calculating petitioner's income for maintenance purposes, specifically in finding that funds he received were loans, not income, and in failing to include as income certain monetary benefits petitioner receives as part of his employment. Finally, respondent argues that the arbitrator erred in setting a permanent termination date and decreasing amounts for the maintenance award. In her prayer for relief, respondent asks that we find that the business interest is marital property, find that the maintenance award constitutes an abuse of discretion, and reverse the dissolution judgment, which incorporates the arbitration award, and remand for further proceedings.

¶ 17     Petitioner argues that respondent has failed to assert valid grounds for either vacating or modifying the arbitration award. He notes that there is no dispute that the parties voluntarily agreed to binding arbitration pursuant to the Arbitration Act. Petitioner argues that the Arbitration Act provides for extremely limited review of awards and specifically delineates the circumstances under which awards may be vacated or modified on review. Petitioner argues that respondent has not argued, let alone established, that any of those circumstances exist here, and thus, he contends that the award and the dissolution judgment must be affirmed. We agree.

¶ 18     It is well settled that the Arbitration Act provides for very limited judicial review. The settlement of a dispute by arbitration is encouraged, and accordingly, judicial review of an arbitration award is far more restricted than appellate review of a trial court's decision. *Spencer v. The Ryland Group, Inc.*, 372 Ill. App. 3d 200, 203 (2007). Indeed, "the scope of judicial review of an arbitration award is *nothing* like the scope of an appellate court's review of a trial court's decision." (Emphasis added.) *Hawrelak v. Marine Bank, Springfield*, 316 Ill. App. 3d 175, 178 (2000). There exists a presumption that the arbitrator did not exceed his or her authority, and the award will be construed, wherever possible, so as to uphold its validity. *Herricane Graphics, Inc. v. Blinderman Construction Co.*, 354 Ill. App. 3d 151, 155 (2004). In fact, a court cannot overturn an award even if (1) it is illogical or inconsistent, (2) the arbitrator made errors of judgment or mistakes of law, or (3) the court would have reached a different result. *Id.* An award containing gross mistakes of law or gross mistakes of fact may be set aside, but only if such a gross mistake is evident on the face of the award itself (not merely within the arbitrator's opinion). *Beatty v. The Doctors' Co.*, 374 Ill. App. 3d 558, 563 (2007). A gross mistake is one that is so serious that a reviewing court may presume that, had the arbitrator been apprised of his or her mistake, he or she would have ruled differently. *Sloan Electric v. Professional Realty & Development Corp.*, 353 Ill. App. 3d 614, 621 (2004).

¶ 19     This limited review of arbitration awards, as established by the Arbitration Act, embodies a legislative policy favoring enforcement of arbitration agreements. See *GPS USA, Inc. v. Performance Powdercoating*, 2015 IL App (2d) 131190, ¶¶ 17-18. Moreover, " '[l]imited judicial review of arbitration awards fosters the long-accepted and encouraged principle that an arbitration award should be the end, not the beginning of litigation.' " *Id.* ¶ 18 (quoting *First

*Health Group Corp. v. Ruddick*, 393 Ill. App. 3d 40, 48 (2009)). "The point of arbitration is to provide a quick and economical alternative to litigation, not to add yet another round before entering the [circuit] and appellate courts." (Internal quotation marks omitted.) *Id.* Further, when parties agree to submit a dispute to binding arbitration, they bargain for finality. *Id.* The parties agree to have their dispute settled by an arbitrator, and therefore, it is the *arbitrator's* view that they agree to accept. See *Herricane Graphics*, 354 Ill. App. 3d at 155. In other words, the parties choose how their dispute is to be decided, and judicial modification of an arbitrator's award deprives the parties of that choice. *Hawrelak*, 316 Ill. App. 3d at 178.

¶ 20       The party challenging an arbitration award bears the burden of establishing, by clear and convincing evidence, that the award was improper. *Herricane Graphics*, 354 Ill. App. 3d at 156. Under section 12 of the Arbitration Act, the court shall *vacate* the award only if (1) the award was "procured by corruption, fraud or other undue means"; (2) there was evident bias on the part of the arbitrator; (3) the arbitrator exceeded his or her authority; (4) the arbitrator failed to consider relevant evidence or refused to allow a reasonable request for a continuance; or (5) there was no agreement to arbitrate. 710 ILCS 5/12(a) (West 2014). Under section 13 of the Arbitration Act, the court shall *modify or correct* the award only if (1) there is an evident miscalculation of figures or an evident mistake in the description of any person or thing referred to in the award; (2) the arbitrator made a decision on a matter not submitted to him or her, *and* the award can be corrected without affecting the merits of the decision on the matters submitted; or (3) the award is imperfect in a matter of form not affecting the merits of the controversy. 710 ILCS 5/13(a) (West 2014).

¶ 21       Before ruling, the trial court here reviewed the written arguments but did not hear testimony on the motion to confirm the award. As such, our review of the trial court's decision to confirm is *de novo*. See *GPS USA*, 2015 IL App (2d) 131190, ¶ 20. We must, therefore, decide whether the court properly confirmed the award or whether respondent established by clear and convincing evidence that the award should be vacated or modified under section 12 or 13 of the Arbitration Act.

¶ 22       Clearly, the trial court properly confirmed the award. Respondent did not, in her arguments before the trial court, assert that factors under section 12 or 13 of the Arbitration Act required vacating or modifying the award. Similarly, respondent makes *no* such argument on appeal. She does not frame her challenges on appeal within the framework of the Arbitration Act and the well-established law concerning our limited review of arbitration awards. Rather, and almost as if an arbitration under the Arbitration Act did not even occur, respondent asserts that a "trial court's" classification of property as marital or nonmarital is reviewed under the manifest-weight-of-the-evidence standard, the propriety of a maintenance award is reviewed under the abuse-of-discretion standard, and whether an item constitutes "income" under the Marriage Act is a question of law reviewed *de novo*. As respondent does not assert that the award should be vacated or modified under section 12 or 13 of the Arbitration Act or assert that a gross mistake of law or fact, evident on the face of the award, exists, her arguments are simply beyond the purview of our judicial review of the arbitration award. Again, we may not modify an arbitration award upon a request to, in effect, reconsider the merits of the case. See *Kalish v. Illinois Education Ass'n*, 166 Ill. App. 3d 406, 410 (1988).

¶ 23       In her reply brief, respondent attempts to distinguish this case from the aforementioned well-established authority. Essentially, respondent raises three arguments to suggest that our review here is not limited by sections 12 and 13 of the Arbitration Act. First, respondent points

out that, in 2011, the Arbitration Act was amended to provide that "arbitrators shall decide the dispute in accordance with any rules of law chosen by the parties as applicable to the substance of the dispute" or, if the parties make no such designation, "by the conflict of law rules that they consider applicable." 710 ILCS 5/8(c)(i), (ii) (West 2012); see Pub. Act 96-1476, § 5 (eff. Jan. 1, 2011). Respondent offers *no* argument or authority to suggest that this amendment somehow alters the limited scope of review provided by the Arbitration Act, and therefore, her argument is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016). Moreover, we note that, since the amendment, courts have not departed from established precedent that limits the scope of judicial review of arbitration awards. See, *e.g.*, *Advocate Financial Group v. Poulos*, 2014 IL App (2d) 130670, ¶¶ 49-50. Finally, we see no relevance of the amendment to respondent's appellate arguments. There appears to be no dispute that the parties agreed to the application of Illinois law, and there is no dispute that the arbitrator applied Illinois law. Respondent simply disagrees with the result.

¶ 24       Second, respondent asserts that our review of the award is not limited because section 18 of the Arbitration Act provides that "[a]ppeals may be taken in the same manner, upon the same terms, and with like effect as in civil cases." 710 ILCS 5/18 (West 2014). Again, respondent offers no argument or authority to suggest that section 18 somehow alters the limited scope of review explicitly provided by the Arbitration Act, and therefore, her argument is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016). Moreover, again, we fail to see section 18's relevance here. This section, in general, appears to simply mean that an appellate court has jurisdiction to consider an appeal of a trial court's judgment confirming, vacating, or modifying an arbitration award, filed within 30 days of the judgment, the same as in other civil cases. See, *e.g.*, *Glover v. Fitch*, 2015 IL App (1st) 130827, ¶ 22. Here, there is no dispute that the trial court's orders confirming the arbitration award and entering the dissolution judgment incorporating that award are appealable. The issue, rather, is whether limited review applies. We have found no authority to suggest that section 18 affects precedent limiting the scope of review of arbitration awards. Indeed, were we to accept respondent's suggestion that section 18 somehow alters the scope of review, sections 12 and 13 of the Arbitration Act would be rendered meaningless.

¶ 25       Third, respondent points out that this arbitration did not concern a breach of contract or a collective bargaining agreement. Rather, it concerned a dissolution of marriage, a matter of public policy, and the proceedings commenced and ended in the trial court, with the trial court ruling substantively on other issues. Respondent cites case law establishing that an arbitration award may be vacated for violating public policy, that the dissolution of a marriage implicates public policy, and that dissolution and maintenance issues are appealable. However, respondent cites *no authority* to support her suggestion that limited judicial review of arbitration awards is not applicable to awards involving property and maintenance issues, nor does she argue that an award resolving property and maintenance issues violates public policy. Therefore, the argument is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016). Forfeiture aside, we note that we have found no authority to support respondent's claim that the voluminous precedent establishing limited review of arbitration awards does not apply when the parties agreed to arbitrate property and maintenance issues. Moreover, we see no import whatsoever to the fact that the trial court here ruled on other issues pertaining to the divorce and then entered the dissolution judgment after confirming the arbitration award. Indeed, the Arbitration Act provides that, upon receipt of an arbitration award and upon application of a party, the court "shall confirm an award" (unless section 12 or 13 is at issue). 710 ILCS 5/11

(West 2014). It is, therefore, unclear why the trial court's involvement in the process of confirming the award, as prescribed by the Arbitration Act, coupled with its authority to decide and enter judgment upon issues the parties did *not* agree to arbitrate, would somehow affect our review of the award and the trial court's decision to confirm it. Further, we reject any suggestion by respondent that she is actually asking us to review the dissolution judgment, as opposed to the arbitration award, and that the distinction somehow modifies the scope of our review. Although respondent could, theoretically, have appealed other trial court orders that concern matters not arbitrated, in reality, the issues respondent raises on appeal concern no substantive rulings by the trial court other than the trial court's confirmation of the arbitration award and the alleged errors in the arbitrator's findings.

¶ 26    Finally, that dissolution-of-marriage issues can implicate public policy does not necessarily affect judicial review of arbitration awards concerning the issues raised here. This case does not involve child custody or support issues, where the law severely limits, on public policy grounds, the ability to privately contract away or limit rights. See, *e.g.*, *In re Marriage of Best*, 387 Ill. App. 3d 948, 951 (2009). Moreover, *any* arbitration award, regardless of the nature of the underlying issues, may be vacated if it violates public policy. See, *e.g.*, *Equity Insurance Managers of Illinois, LLC v. McNichols*, 324 Ill. App. 3d 830, 835 (2001) ("An award may be set aside if it violates some explicit public policy. Illinois public policy is found in its constitution, statutes, and judicial decisions."). However, here, respondent does not explicitly argue that the arbitration award violates public policy;[4] the closest she comes is to challenge the duration and amount of maintenance. However, as respondent conceded below, the Marriage Act clearly allows for a fixed-term permanent-termination maintenance award where a marriage lasted less than 10 years (750 ILCS 5/504(b-4.5) (West 2014)). Thus, as the basis for the type of award respondent received derives from the statute itself, no clear violation of public policy is apparent in the award. As such, respondent's challenge is simply to the arbitrator's findings that supported the duration and amount of the award, which, again, are beyond the scope of our review. (We note, however, that respondent is highly educated, has vast banking experience, was paid relatively large sums of maintenance during the pendency of the dissolution proceedings, and will continue to receive significant maintenance for three more years. Moreover, the arbitrator rejected as unsupported respondent's claims that she had made *bona fide* efforts to obtain new employment and had health concerns that impacted her ability to work. For many reasons, this case is a far cry from *Warren v. Warren*, 169 Ill. App. 3d 226, 231-32 (1988), cited in respondent's reply brief, where a waiver of maintenance was found unenforceable as against public policy because the agreement provided *no* financial settlement whatsoever to the wife.)

¶ 27    In sum, respondent fails to assert any valid grounds under section 12 or 13 of the Arbitration Act to vacate or modify the arbitration award that was confirmed and incorporated into the dissolution judgment. Her arguments challenging the arbitrator's findings are, therefore, beyond the purview of our limited review of arbitration awards. Respondent fails to

---

[4]In order to vacate an award under the "public policy exception," we would be required to undertake a two-step analysis: (1) to inquire whether a well-defined and dominant public policy can be identified and, if so, (2) to determine whether the arbitrator's award violated the public policy. *E.g.*, *Chicago Fire Fighters Union Local No. 2 v. City of Chicago*, 315 Ill. App. 3d 1183, 1191 (2000). As mentioned, to ascertain the existence of a public policy, we look to our constitution, statutes, and relevant judicial opinions. *Id.* Again, respondent does not ask us to undertake this analysis.

present any authority supporting her suggestion that judicial review of arbitration awards that concern property or maintenance differs from the limited judicial review, supported by established precedent, of other arbitration awards. As such, we have no basis to conclude that the trial court erred in confirming the arbitration award and entering the judgment incorporating the award.

¶ 28                                             III. CONCLUSION

¶ 29       The judgment of the circuit court of Du Page County is affirmed.

¶ 30       Affirmed.