**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 240133-U

Order filed December 3, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| XCHANGE MOTORS, INC., an Illinois Corporation, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellant/Cross Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0133 Circuit No. 23-LM-41 |
| | ) ) | Honorable |
| JESSICA IMPSON, | ) ) | Kenneth L. Popejoy, Judge, Presiding. |
| Defendant-Appellee/Cross Appellant. | ) | |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Justices Hettel and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1   *Held*:  The circuit court did not err in confirming the arbitration award when no gross mistake of law or fact appears on the face of the arbitration award.

¶ 2   Xchange Motors, Inc. (Xchange) appeals from the Du Page County circuit court's denial of its motion to modify or vacate the arbitration award entered against it. On appeal, it argues that the circuit court erred in denying its motion and in confirming the arbitration award because the arbitrator's ruling was incorrect. We affirm.

## I. BACKGROUND

This matter stems from Jessica Impson's purchase of a 2008 modified Subaru from Xchange. The parties proceeded to arbitration over an alleged defect and Impson's claim that Xchange breached its implied warranty of merchantability. After a hearing, the arbitrator found that both parties had violated certain statutory requirements and ordered Xchange to arrange for the Subaru's towing for an inspection, to provide an estimate for its repair, and to repair the vehicle at its own expense. She also awarded Impson attorney fees in a later order.

### A. The Arbitration Hearing

Regarding the facts leading to arbitration, no transcripts or filings with the arbitrator have been provided to this court other than Impson's petition for attorney fees and the arbitrator's award and order granting attorney fees. Although no record has been provided from these proceedings, the arbitrator made several findings of fact in her award and provided a summary of the testimony elicited at the hearing.

At the hearing, Impson testified that she found the vehicle at issue online before going to Xchange's location and speaking with staff on site. The staff member she spoke to at the location told her that Xchange purchased the vehicle at an auction. He also informed her that Xchange had inspected the vehicle prior to listing it for sale, and no issues were revealed at the inspection. After test driving it, Impson paid for the vehicle in cash on March 12, 2021. Impson did not perform an independent inspection of the vehicle prior to the sale.

On March 23, 2021, the vehicle broke down, and Impson towed it to a Subaru dealership in Elgin, Illinois. She stated that she immediately called Xchange when the vehicle broke down and that she later provided Xchange with a written repair estimate. The estimate detailed that the vehicle required a new engine, and it would cost approximately $10,000 to repair it. At the

2

arbitration hearing, Impson produced the estimate, but it was not entered into evidence as she did not provide sufficient foundation for it and had not brought an expert witness to the hearing to testify regarding the defects in the engine or the accuracy of the estimate. Impson further testified that after bringing the estimate to Xchange, it refused to pay for the repair, stating that she purchased the vehicle "as is," therefore, it was not responsible for any problems she had after purchase. Impson could not recall if Xchange offered to inspect or repair the vehicle itself if she allowed it to be inspected by a repair shop of its choosing.

¶ 9        It was established that Impson's son had driven the vehicle for less than 500 miles before the engine malfunctioned. This evidence was provided in the form of a photograph of the odometer Impson produced during her testimony, which the arbitrator admitted over Xchange's objections.

¶ 10        On cross examination, Impson stated that when she purchased the vehicle, she did see the words "as is" on the Buyers Guide form and understood what that meant. She did not remember whether she asked Xchange what modifications were done to the vehicle at the time of purchase. She stated she did not have the vehicle inspected prior to purchasing it, and Xchange did not tell her she could have one. She did not ask for an inspection because she trusted Xchange's statement that it had been inspected before being listed for sale. A review of the emails between Impson and Xchange revealed that she requested Xchange pay $10,000 for the repairs or else fully refund her for the vehicle.

¶ 11        Sefer Morina, a co-owner and Xchange's general manager, also testified at the hearing. The arbitrator noted that Morina claimed he was familiar with the situation, though he was not the person who sold the vehicle to Impson. However, Morina testified that he initially responded to the emails Impson sent when she first found the vehicle online. Additionally, he claimed that

3

when Impson came in with her estimate for the repair, she caused a scene and was rude to the employees.

¶ 12    Morina testified that Xchange's position for claiming that it had no liability was because the vehicle was sold "as is." When asked if the sales documents contained the required language contained in section 2L(j)(3) of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act), Morina could not recall. 815 ILCS 505/2L(j)(3) (West 2022). He stated that the "WE OWE/YOU OWE" form did not contain the language, and the paperwork did not declare any particular defect related to the vehicle. There were no documented communications regarding what modifications were made to the vehicle, nor was there anything in writing indicating that Xchange had offered to inspect or repair the vehicle once Impson contacted it about the vehicle breaking down. Morina stated that the initial offer to inspect and repair came during Impson's in-person visit, and the position that Xchange was not liable for repairs came after Impson refused the offer to have it inspected by a shop of Xchange's choosing.

¶ 13    Xchange produced an expert witness who testified that he inspected the vehicle prior to Xchange listing it for sale. He stated that the vehicle had been rebuilt and heavily modified but was in good condition. He had found no defects in the engine at that time. On cross-examination, he stated that he was not surprised the engine blew, because it was a Subaru that had been heavily modified. He also had not been able to tell if there were any internal problems with the engine because that would have required him to dismantle the engine completely. The average buyer would not have been able to tell if there were internal issues with the engine because those problems would not have been found during a routine inspection.

¶ 14    In issuing an award, the arbitrator made several findings. First, she found that section 2L of the Consumer Fraud Act applied here because Impson provided sufficient evidence to prove

4

that a defect occurred and that she contacted Xchange within 15 days and that less than 500 miles had been driven when the defect revealed itself. *Id.* § 2L(c).

¶ 15        The arbitrator also believed testimony conflicted regarding whether Xchange offered to inspect and repair the vehicle when Impson first called to complain of it. The fact that Impson did not inspect the vehicle prior to purchase invoked section 2-316(3)(a) of the Uniform Commercial Code (UCC), which provides that "as is" language excludes warranties, and section 2-316(3)(b), which provides that when choosing not to inspect the product, a buyer essentially waives implied warranties as they apply to defects. 810 ILCS 5/2-316(3)(a), (b) (West 2022).

¶ 16        The arbitrator also noted that under section 2L(j) of the Consumer Fraud Act, a purchaser may waive an implied warranty of merchantability if the seller fully discloses the defect, the buyer agrees to purchase the vehicle with knowledge of the defect, and the buyer signs a waiver that has the appropriate language. 815 ILCS 505/2L(j) (West 2022). While Xchange's expert testified that he told the company that the vehicle had been rebuilt and modified, Impson was merely told that it was modified. The arbitrator found that the modifications were not fully disclosed, thus Xchange did not fully comply with section 2L(j) of the Consumer Fraud Act. See *id.* Because Xchange did not fully comply with the mandates of the statute, the arbitrator found Impson did not waive the implied warranty of merchantability under the Consumer Fraud Act. The arbitrator also determined that the improper disclosure regarding whether the Subaru was modified or rebuilt constituted a circumstance that required another result under section 2-316(3)(a) of the UCC. 810 ILCS 5/2-316(3)(a) (West 2022). Thus, the warranties were also not waived under the UCC.

¶ 17        The arbitrator next found that Impson had the burden of proving a defect but failed to do so. Impson was unable to admit the repair estimate because she could not lay the proper

5

foundation, and she had not offered any expert as a witness at the hearing. The only evidence before the arbitrator to indicate a defect was present was Impson's own testimony that the vehicle broke down after she had purchased it.

¶ 18    The arbitrator held that both parties failed to comply with the Consumer Fraud Act—Impson because she did not give Xchange an adequate opportunity to repair the vehicle itself, and Xchange because it did not provide the proper disclosures. In finding Xchange violated the Consumer Fraud Act, the arbitrator also found that it had breached the implied warranty of merchantability. The arbitrator chose not to void the transaction but ordered Xchange to arrange to have Impson's vehicle towed for inspection and to provide her with a written report and estimate for repairs. If Impson chose, she could have an independent inspection. Xchange was required to pay for the repairs regardless of where the repairs were made.

¶ 19    The arbitrator later awarded Impson $8,750 in attorney fees and costs. Impsons's fee petition is included in the record; however, there is nothing in the record that indicates Xchange responded to it. In reaching the decision to award fees, the arbitrator found that she could award fees because Impson prevailed in part on her Consumer Fraud Act claim. The attorney's hourly rate of $475 was customary and reasonable for the work performed. She reduced the award from the requested $12,730 because the invoices provided by Impson's attorney included work performed that the arbitrator deemed unnecessary or unreasonable.

¶ 20                                B. Circuit Court Proceedings

¶ 21    Xchange filed an action in the circuit court to vacate or modify the arbitration award pursuant to the Uniform Arbitration Act (Arbitration Act). 710 ILCS 5/12(b), 13(b) (West 2022). Xchange alleged that the arbitration award constituted a gross error of law and a manifest disregard of the law. After motion briefing and argument, the court relied on the standard of

6

review set out in *Herricane Graphics, Inc. v. Blinderman Construction Co.*, 354 Ill. App. 3d 151, 155 (2004), when denying Xchange's motion. Specifically, it found Xchange did not provide clear and convincing evidence that the award was a gross mistake of law or fact.

¶ 22    Impson also asked the court to confirm the arbitration award, including issuing a mandatory injunction, ordering defendant to repair the vehicle, and awarding attorney fees under the interim award, plus interest and expenses and costs for litigation. The court confirmed the award but did not grant any other request, stating that it did not believe Xchange's filings in the circuit court were frivolous.

¶ 23    Xchange appealed; Impson cross-appealed.

¶ 24                              II. ANALYSIS

¶ 25                           A. Standard of Review

¶ 26    We must first note that, based on our review of the record, there is no transcript of the arbitration hearing, nor are there any of the supporting documents submitted to the arbitrator. The appellant has a duty to provide an adequate record for review by the appellate court. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Without a complete record, we cannot fully review an appellant's claims, and we must presume that the arbitrator had a sufficient factual basis for the award and that the award conforms with the law. *Foutch*, 99 Ill. 2d at 391-92; see *TruServ Corp. v. Ernest & Young, LLP*, 376 Ill. App. 3d 218, 225 (2007) (applying *Foutch* to the review of an arbitration award). However, because Xchange's argument focuses on whether a gross mistake of law is apparent on the face of the arbitration award, we will nonetheless proceed to address the merits of the appeal. See *Midstate Siding and Window Co., Inc. v. Rogers*, 204 Ill. 2d 314, 319 (2003).

¶ 27     Because settlement of matters through arbitration is encouraged, the arbitration process provides for a very limited judicial review. *Spencer v. The Ryland Group, Inc*., 372 Ill. App. 3d 200, 203 (2007). Indeed, "the scope of judicial review of an arbitration award is nothing like the scope of an appellate court's review of a trial court's decision." *Hawrelak v. Marine Bank, Springfield*, 316 Ill. App. 3d 175, 178 (2000). There exists a presumption that the arbitrator did not exceed his or her authority, and the award will be construed to uphold its validity when possible. *Herricane Graphics, Inc.*, 354 Ill. App. 3d at 155-56. A court cannot overturn an award even if it is illogical or inconsistent, the arbitrator made errors of judgment or mistakes of law, or the court would have reached a different result. *Id.* at 156. An award can only be overturned if it contains "gross mistakes of law" or "gross mistakes of fact," but only if such a gross mistake is evident on the face of the award itself and not merely within the arbitrator's opinion. *Beatty v. The Doctors' Co*., 374 Ill. App. 3d 558, 563 (2007). There can be no gross error if an examination of the underlying record is required to find whether such an error occurred. See *id.* at 564 (there could be no gross error of fact or law where "court would have to undertake an independent analysis of the underlying complaint and insurance policy in order to determine whether the arbitrators erred.").

¶ 28     A gross mistake is one that is so serious that a reviewing court may presume that, had the arbitrator been apprised of his or her mistake, he or she would have ruled differently. *Sloan Electric v. Professional Realty & Development Corp.*, 353 Ill. App. 3d 614, 621 (2004). Our supreme court explained the gross mistake of law doctrine as follows:

> "Errors of judgment in law are not grounds for vacating an arbitrator's award when the interpretation of law is entrusted to the arbitrator. [Citation.] Only where it appears on the face of the award (and not in the arbitrator's opinion) that the

8

arbitrator was so mistaken as to the law that, if apprised of the mistake, the award would be different may a court review the legal reasoning used to reach the decision. [Citation.]." *Board of Education of City of Chicago v. Chicago Teachers Union, Local No. 1*, 86 Ill. 2d 469, 477 (1981).

¶ 29    It is with these considerations in mind that we review Xchange's contentions on appeal. We review the circuit court's decision to confirm the arbitration award based on the above restrictions *de novo. Asset Acceptance, LLC v. Tyler*, 2012 IL App (1st) 093559, ¶ 42.

¶ 30                                   B. Xchange's Appeal

¶ 31    Xchange raises the following arguments on appeal: (1) Impson waived any warranty of merchantability when she purchased the vehicle "as is," (2) she also waived warranties when she declined to obtain an inspection prior to purchase, (3) Impson has failed to comply with orders of the arbitration award, and (4) awarding attorney fees was improper in this case. We address each of these arguments in turn.

¶ 32                               1. *The "As-Is" Provision*

¶ 33    Xchange first argues that Impson waived any implied warranty of merchantability when she purchased her used vehicle "as is." Section 2-316(3)(a) of the UCC provides that, notwithstanding the provisions of subsection (2):

> "unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." 810 ILCS 5/2-316(3)(a) (West 2022).

¶ 34    Xchange argues that Impson purchased the vehicle when "as is" was marked clearly and multiple times in the purchase agreement. It contends that because Impson was informed that she

9

must purchase the vehicle "as is" due to the modifications, she waived all warranties and cannot now recover for defects.

¶ 35    Xchange largely rests on the argument that because the vehicle was sold "as is" all warranties are waived, and the arbitrator's finding is a manifest disregard of the law. However, Xchange does not consider the full text of section 2-316(3)(a), specifically, that the waiver applies "unless the circumstances indicate otherwise." *Id.* Xchange's argument completely ignores the arbitrator's finding that circumstances here indicated otherwise, meaning the arbitrator made findings that would otherwise indicate the relevant warranty should not be waived. The award clearly states that Xchange did not fully inform Impson of the extent of the rebuilt and modified aspects of the vehicle. Because of this finding, the arbitrator found that Impson could not knowingly and with full understanding waive the warranty by purchasing the vehicle "as is."

¶ 36    Next, Xchange turns to the evidence presented at the hearing to argue that there was insufficient evidence to find any breach of warranty. We cannot turn to the evidence presented at the hearing because we may not make any independent analysis of the record from arbitration other than the actual award, even if such a record had been provided to us for review. See *Beatty*, 374 Ill. App. 3d at 563. The arbitrator makes several findings of fact in her written award; however, in the analysis contained in the arbitration award, the arbitrator does not provide an explanation as to how she came to the result that Xchange breached the implied warranty of merchantability. Her decision is still clear—Xchange violated the Consumer Fraud Act and breached the warranty. There is no requirement that the arbitrator provide any sort of explanation for her ultimate decision. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 80 S. Ct. 1358, 1361 (1960) ("Arbitrators have no obligation to the court to give their reasons for an

10

award."); *Braun/Skiba, Ltd. v. Orchard Partnership*, 177 Ill. App. 3d 331, 335 (1988) ("It is well settled that arbitrators need not provide explanations or rationale to show how their conclusions were reached. An arbitrator need only announce his result."). Based on the award before us and the presumption that the arbitrator's award must be valid (*Herricane Graphics, Inc.*, 354 Ill. App. 3d at 155-56), we see no indication on the face of the award that any mistake occurred, let alone a gross mistake.

¶ 37 Xchange has provided no argument as to why this should not be a circumstance that would nullify waiver of the implied warranty of merchantability, nor has it provided any authority to demonstrate that the arbitrator's decision was a gross mistake of law. We find no gross mistake on the face of the award where the arbitrator made her determination based on the language of the statute before her and found that the circumstances surrounding this particular case warranted a finding that no waiver occurred and Xchange breached the implied warranty of merchantability.

¶ 38 *2. Inspection Waiver*

¶ 39 Xchange next argues that Impson chose not to have an inspection performed prior to purchase, which would also waive the warranty under section 2-316(3)(b) of the UCC. 810 ILCS 5/2-316(3)(b) (West 2022). Section 2-316(3)(b) provides that:

"when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him." *Id.*

¶ 40 Again, Xchange does not give full effect to all the words in this provision. The crucial flaw with Xchange's argument here is that the evidence at trial indicated that an examination

11

would not have revealed the defect at issue if Impson had gotten an inspection. Xchange's own expert testified that it would not have been possible to find the alleged defect without completely dismantling the engine, which is much more invasive of an inspection than the UCC or any purchase agreement would contemplate. Thus, Impson could not have waived any warranties based on this provision, because this defect would not have been readily apparent if she had chosen to get a proper inspection. Accordingly, we find no mistake in the arbitration award, gross or otherwise, when the statute clearly indicates no waiver could have occurred here when any issues to the engine would not have been discovered through an ordinary examination of the vehicle.

¶ 41                                  3. *Impson's Failure to Comply with the Award*

¶ 42        Xchange also repeatedly argues that Impson failed to produce her vehicle for inspection and to obtain an estimate after the arbitrator ordered her to do so. It contends that because Impson is not in compliance with the award she still cannot prove any defect to her vehicle, and the award should be vacated for these reasons.

¶ 43        Besides being irrelevant for our review of whether there are errors on the face of the arbitration award, the award specifically orders Xchange to arrange for the tow and inspection of the vehicle. It was Xchange's responsibility and obligation to arrange for the transport of the vehicle, not Impson's. There is nothing in the record to support these allegations, or to prove that Xchange attempted to fulfill its own obligations under the order.

¶ 44        Moreover, overall compliance with the order is a separate issue that has not been addressed in the lower court. The issue we have been asked to address on appeal is whether the arbitrator made a gross error in the arbitration award, not whether the parties have complied with

that award. Thus, these points are not relevant to the appeal before us and will not be considered or addressed further.

¶ 45                                          4. *Attorney Fees*

¶ 46        Finally, Xchange makes several arguments that Impson should not have been awarded attorney fees and that the fees awarded were excessive and unreasonable. Xchange argues that the arbitrator's award of fees is contrary to the American Rule, which dictates that parties shall be responsible for their own attorney fees and other costs attributable to litigation unless a statute or agreement provides otherwise. See *Goldstein v. DABS Asset Manager, Inc.*, 381 Ill. App. 3d 298, 302 (2008). It also contends that Impson could not receive fees because she should not have been considered a prevailing party.

¶ 47        First, we must note once more that the only documents in the record regarding attorney fees in front of the arbitrator is Impson's petition and the arbitrator's decision. There is no record of any other arguments made at the hearing, and the arbitrator's decision notes that Xchange did not file a response to the petition. Xchange, as the appellant, has the burden to present a sufficiently complete record to support a claim of error on appeal. *Foutch*, 99 Ill. 2d at 391-92; *TruServ Corp.*, 376 Ill. App. 3d at 225. In the absence of such a record on appeal, it will be presumed that the action was taken in conformity with the law and had a sufficient factual basis. See *Foutch*, 99 Ill. 2d at 391-92. Any doubts which may arise from the incompleteness of the record will be resolved against Xchange. *Id*

¶ 48        With respect to an arbitrator's authority to assess fees and expenses, the Arbitration Act specifically provides that "[u]nless otherwise provided in the agreement to arbitrate the arbitrators' expenses and fees, together with other expenses, not including attorney's fees, incurred in the conduct of the arbitration, shall be paid as provided in the award." 710 ILCS 5/10

13

(West 2022). Thus, absent a contrary provision in the arbitration agreement, the Arbitration Act authorizes arbitrators to assess all fees and costs associated with an arbitration proceeding, except for attorney fees. With respect to attorney fees, the Arbitration Act allows this decision to the made by the parties. *Lee B. Stern & Co. v. Zimmerman*, 277 Ill. App. 3d 423, 426 (1995). As such, an arbitrator's authority to assess attorney fees derives from the agreement to arbitrate.

¶ 49     At the time of purchase, Impson and Xchange entered into an agreement to arbitrate, which included a provision that a party is responsible for their own attorney fees. It also included a statement that the arbitrator may decide "who is finally responsible for these fees and costs as provided by law." This provision is sufficient to allow the arbitrator to award fees and costs if she found it appropriate.

¶ 50     The arbitrator here could not award fees based on the implied warranty claim under the UCC but had the ability to do so under the Consumer Fraud Act. *Rubin v. Marshall Field & Co.*, 232 Ill. App. 3d 522, 534 (1992). Impson filed her petition, and the arbitrator awarded attorney fees, under section 10a(c) of the Consumer Fraud Act, which would allow her to collect reasonable fees as a prevailing party. 815 ILCS 505/10a(c) (West 2022). The arbitrator therefore had the authority to award fees for the services expended related to the Consumer Fraud Act claim.

¶ 51     Moreover, Illinois courts have held that when a party prevails on multiple claims, including a claim for consumer fraud, an award of all reasonable attorney fees and costs is proper where the claims were "based on the same evidence and the time spent on each issue could not be distinguished." *Ciampi v. Ogden Chrysler Plymouth, Inc.*, 262 Ill. App. 3d 94, 115 (1994); see *Berlak v. Villa Scalabrini Home for the Aged, Inc.*, 284 Ill. App. 3d 231, 238-39 (1996). While the arbitrator here did not specifically find that the attorney fees and costs incurred in defending

14

the consumer fraud claim could not be differentiated from those incurred in defending the other counts, the claims were premised on the same factual issues and the same arguments were used for each claim. Therefore, no gross error of law is apparent on the face of the award as there is no indication that the fees could be readily distinguishable as to being incurred only for the purposes of the breach of warranty claim. See *TruServ Corp.*, 376 Ill. App. 3d at 225.

¶ 52 Next, Xchange takes issue with the arbitrator's statement "[t]hat attorney fees are recoverable pursuant to the Consumer Fraud Act, under which Claimant prevailed in part." It argues that because the arbitrator found that Impson also violated section 2L(f) of the Consumer Fraud Act, she cannot be a prevailing party. See 815 ILCS 505/2L(f) (West 2022). Xchange argues that because Impson failed to comply with the statutory requirement to provide Xchange the opportunity to repair any defects, her claim never should reach the point where Xchange can be in violation of the Consumer Fraud Act. See *id.* Thus, she should not have been found to be a prevailing party entitled to fees because the arbitrator never should have reached the point of finding that Xchange violated the Consumer Fraud Act as well, thus barring her from receiving attorney fees.

¶ 53 There is no authority that indicates that a party "prevailing in part" is not a prevailing party. In fact, caselaw indicates the opposite. See *Grossinger Motorcorp, Inc. v. American National Bank & Trust Co.,* 240 Ill. App. 3d 737, 753 (1992) ("A party can be considered a 'prevailing party' for the purposes of awarding fees when he is successful on any significant issue in the action and achieves some benefit in bringing suit [citation] * * * or by obtaining an affirmative recovery. [Citation.]"); *Spencer*, 372 Ill. App. 3d at 207-08. The arbitrator clearly found that Impson was successful and could recover from her claim. Thus, Impson is a

prevailing party regardless of whether the arbitrator found her to also have violated provisions of the statute. Accordingly, we see no error in the arbitrator's decision to award attorney fees.

¶ 54 Finally, Xchange argues that the actual amount awarded was excessive. Xchange argues that all the work claimed to be performed was not actually necessary for this kind of arbitration. However, Xchange failed to prove that the amount in fees was unreasonable or excessive on the face of the award. The final award indicates that the arbitrator considered whether the hourly rate was reasonable for the work performed and reduced the amount requested by approximately $4000 because she believed not all the work performed was relevant, necessary, or reasonable. There is no issue raised regarding whether an error in math occurred, and nothing on the face of the award indicates that the arbitrator made any improper findings regarding the fees. In fact, the award indicates that the arbitrator made all the necessary considerations regarding rate and services performed before reaching a total amount to award. Thus, there is no gross error in the total fees awarded.

¶ 55                                   C. Cross-Appeal

¶ 56 In her cross-appeal, Impson argues that fees should be assessed in her favor for the confirmation of the arbitration award in the circuit court.

¶ 57 Section 14 of the Arbitration Act provides:

> "Upon the granting of an order confirming, modifying or correcting an award, judgment shall be entered in conformity therewith and be enforced as any other judgment. Costs of the application and of the proceedings subsequent thereto, and disbursements may be awarded by the court as to the court seems just." 710 ILCS 5/14 (West 2022).

16

¶ 58     "[T]he question of attorney's fees is a matter peculiarly within the province of the trial court [citation], and absent a manifest abuse of discretion, the trial court's decision will not be disturbed." *Stein v. Feldmann*, 85 Ill. App. 3d 973, 974 (1980) (refusal to award attorney fees and costs incurred when enforcing arbitration decision was not an abuse of discretion); *Cerajewski v. Kunkle*, 285 Ill. App. 3d 222, 227-28 (1996) (circuit court did not abuse its discretion when denying a request to award attorney fees after vacating part of an arbitration award). "A trial court abuses its discretion only when its ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would adopt the court's view." *People ex rel. Madigan v. Petco Petroleum Corp.*, 363 Ill. App. 3d 613, 634 (2006).

¶ 59     Impson argues that the circuit court erred in refusing to award attorney fees for the time spent obtaining a confirmation of the arbitration award and litigating the motion to modify filed by Xchange because the court applied the incorrect standard. Although it does not specifically state that it reviewed the request for fees under Illinois Supreme Court Rule 137, Impson argues that the court clearly only considered whether to award fees under the rule because the court repeatedly stated Xchange's filings were not frivolous. See Ill. S. Ct. R. 137 (eff. Jan. 1, 2018). On its own, the court's reasoning that Xchange's motions were reasonable and not frivolous does not indicate the court only reviewed attorney fees as a sanction under the rule, especially when Impson specifically requested them under the Arbitration Act. The circuit court provided an explanation for its reasoning, and there is no evidence on the record that its decision was arbitrary or unreasonable. Therefore, we decline to find that the court abused its discretion when it denied Impson's request for attorney fees in the circuit court.

¶ 60                                    III. CONCLUSION

¶ 61     The judgment of the circuit court of Du Page County is affirmed.

17

¶ 62        Affirmed.